MICKLE v. HENRICHS, Warden of Nevada State Prison, et al.

(District Court, D. Nevada. May 25, 1918.)

No. A-59.

CRIMINAL LAW ☜1213—VASECTOMY IS CRUEL AND UNUSUAL PUNISHMENT.

Rev. Laws Nev. § 6293, authorizing trial court to compel certain criminals to submit to an operation known as vasectomy, which destroys the power of procreation, but may be performed in a painless manner, and is otherwise harmless, violates Const. Nev. art. 1, § 6, prohibiting cruel or unusual punishments.

In Equity. Suit by Pearley C. Mickle against Rufus B. Henrichs, as Warden, and Donald Maclean, as Physician of the Nevada State Prison. Decree restraining defendants from performing a proposed operation.

Woodburn & Bartlett, of Reno, Nev., for plaintiff.

Geo. B. Thatcher, Atty. Gen., and E. T. Patrick, Asst. Atty. Gen., of State of Nevada, for defendants.

FARRINGTON, District Judge. Mickle, having pleaded guilty to the charge of rape, was sentenced to be imprisoned in the Nevada State Penitentiary for an indeterminate period of not less than 5 years. It was also ordered as a part of the judgment that an operation be performed on his person sufficient to deprive him of the power of procreation. This suit is brought against the warden and the physician of the Nevada State Prison to procure a decree of this court restraining them from carrying the order of the court into effect. All questions as to jurisdiction have been expressly waived.

The operation directed is known as vasectomy, and is authorized by section 6293 of the Revised Laws of Nevada, which reads as follows:

"Whenever any person shall be adjudged guilty of carnal abuse of a female person under the age of ten years, or of rape, or shall be adjudged to be an habitual criminal, the court may, in addition to such other punishment or confinement as may be imposed, direct an operation to be performed upon such person, for the prevention of procreation: Provided, the operation so directed to be performed shall not consist of castration."

Plaintiff claims that the statute violates section 6 of article 1 of the Constitution of Nevada, "in that the punishment therein permitted and authorized is cruel and unusual." The section referred to is as follows:

"Excessive bail shall not be required, nor excessive fines imposed, nor shall cruel or unusual punishments be inflicted."

Under this provision, if the punishment is either cruel or unusual, it is prohibited. It was agreed by counsel that the operation could be performed in such manner as to be painless, and such was the effect of the testimony. The operation, under a local anæsthetic, occupies but a few minutes. The person operated on may at once

thereafter resume his ordinary avocation and physical activities, without serious discomfort. The power to beget offspring is taken away, without impairing the desire and capacity for sexual enjoyment.

It appears from the record that Mickle is an epileptic. That fact was accorded considerable weight by the court in pronouncing judgment. Possibly in the exercise of its police power, it may be lawful for the Legislature to adopt reasonable measures, adequate and sufficient to prevent degenerates and persons afflicted with transmittable mental defects, physical disease, or criminal tendencies from begetting children; but legislation of that character must operate alike on all unfortunates of the same class, and the classifiation must operate reasonably with relation to the end sought to be accomplished.

The courts of New Jersey recently refused to uphold a state statute providing for the sterilization of certain feeble-minded, epileptic, and criminal defectives confined in penal and charitable institutions of that state. Much stress was laid on the fact that an epileptic confined in a penal institution is less likely to transmit his infirmity to children than an epileptic who is not so confined. It was pointed out by the court that the statute creates two classes, viz. those who are, and those who are not, unfortunate enough to be inmates of such institutions, and it applies its remedy to the former class only; that the classifiation has no relation whatever to the eradication of epilepsy; it is purely arbitrary and artificial, and denies to those least able to protect themselves, equal protection of the law. Smith v. Bd. of Exmrs. of Feeble-Minded, 85 N. J. Law, 46, 88 Atl. 963.

If the purpose of the Nevada statute be to prevent the transmission of criminal tendencies, it must be noted that it does not apply to all convicted offenders, not even to all who are habitual criminals, or to all persons adjudged guilty of rape or carnal abuse of female children, but only to such habitual criminals and persons guilty of rape as the court, in the exercise of a discretion, which is in no wise directed by the statute, may designate.

It is a notorious fact that many judges do not regard mutilation as a wise or lawful method of punishment. It is only those of the contrary opinion who will prescribe vasectomy as a part of the punishment for this offense. Again, it is doubtful whether our penal institutions contain more than a small minority of those undesirables who are inclined to lawlessness and crime. It is easy to imagine that a brute guilty of rape, or who has a tendency to commit such a crime, might regard it rather an advantage than otherwise to be sterilized. As a preventive of this crime vasectomy is without effect. Once free, the convict who has been so punished is still physically capable of committing the offense.

These considerations, however, are beside the issue. There is no attempt by defendants to support the judgment on the ground that vasectomy is calculated to promote general welfare. It is conceded that cruel or unusual punishments are prohibited, regardless of any and all theories of race culture. Whether the operation performed as punishment is violative of the constitutional injunction against cruel or unusual punishment is the question.

This provision in slightly varying form is to be found in the federal Constitution, and in all but three of the state Constitutions. In Washington (article 1, § 14) the inhibition is against "cruel punishment"; in the federal Constitution (article 8) it is against "cruel and unusual punishment"; in Nevada it is against "cruel or unusual punishment"; and in Massachusetts (part 1, art. 26) it is directed expressly to the judiciary:

"No magistrate or court of law shall * * * inflict cruel or unusual punishment."

The federal courts have never attempted a precise definition of either "cruel" or "unusual," as used in the Constitution. The prohibition first appeared in the English Bill of Rights of 1688, and was there directed to modes of punishment which to the modern mind seem barbarous and inhuman, such as the pillory, the thumbscrew, the rack, disemboweling the living victim, drawing, quartering, burning, and boiling.

The decisions are not altogether harmonious. Some hold that, as used in the earlier Constitutions, including that of the United States, the restriction applies only to those ancient punishments which seem so shocking in this more enlightened age. Whitten v. State, 47 Ga. 297, 301.

Judge Story intimates that such limitations on the power to punish are unnecessary, because resort to atrocious punishment is hardly possible by the government of a free people. In support of this view attention is called to the fact that even before the Revolutionary War the modes of punishment mentioned had been practically discarded, not only in the colonies, but in England; and as originally drafted and adopted, the federal Constitution contained no such restriction. It was only in response to a strong popular demand that it became a part of the organic law of the nation as the Eighth Amendment. It is unreasonable to believe that it was adopted solely as a shield against obsolete abuses.

In other and more recent cases there are strong expressions to the effect that imprisonment, though not in itself cruel or unusual, may become so if the term of confinement is grossly disproportionate to the offense. McDonald v. Commonwealth, 173 Mass. 322, 53 N. E. 874, 73 Am. St. Rep. 293; Weems v. United States, 217 U. S. 349, 30 Sup. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705. In the latter case the Supreme Court of the United States seems to have committed itself to the more humane and liberal doctrine that the Eighth Amendment is a regulation of sufficient vitality and adaptability to restrain cruel innovations in the way of punishment.

The Nevada Constitution was not adopted until 1864, a comparatively recent date. Neither then nor at any other time within the history of this state, prior to the date of the act in question, had mutilation of the person been a recognized mode of punishment. It is to be noted that the Nevada Constitution forbids punishments either "cruel or unusual." The terms are used disjunctively, and if accorded their usual significance it is evident the purpose was to forbid newly devised as well as cruel punishments.

262 F.—44

In Cooley on Constitutional Limitations (6th Ed.) p. 402, it is said that—

"Those degrading punishments which in any state had become obsolete before its existing Constitution was adopted, we think, may well be held forbidden by it as cruel and unusual. We may well doubt the right to establish the whipping post and the pillory in states where they were never recognized as instruments of punishment, or in states whose Constitutions, revised since public opinion had banished them, have forbidden cruel and unusual punishment. In such states the public sentiment must be regarded as having condemned them as 'cruel,' and any punishment which, if ever employed at all, has become altogether obsolete, must certainly be looked upon as 'unusual.'"

In Hobbs v. State, 133 Ind. 404, 408, 32 N. E. 1019, 1020, 18 L. R. A. 774, 777, the court says that "unusual," as used in the Constitution, means a class of punishments which never existed in the state, or that class which public sentiment must be regarded as having condemned. It may be said, as questioning the accuracy of this definition, that the courts have repeatedly upheld statutes authorizing electrocution, but in those cases death was the punishment; electrocution was merely the means adopted to reach that end as swiftly and as painlessly as possible. Storti v. Commonwealth, 178 Mass. 549, 60 N. E. 210, 52 L. R. A. 530.

In State v. Feilen, 70 Wash. 65, 126 Pac. 75, 41 L. R. A. (N. S.) 418, Ann. Cas. 1914B, 512, the Supreme Court of Washington came to the conclusion that a statute authorizing vasectomy was not unconstitutional. This decision was rendered under a Constitution which prohibited cruel punishment only. In this it differs from the Nevada Constitution, which prohibits cruel or unusual punishment. I am not inclined to adopt the view that the two provisions mean substantially the same thing.

The same question came up in the case of Davis v. Berry (D. C.) 216 Fed. 413. There Judges Smith, Pollock, and Smith McPherson had under consideration an Iowa statute directing the operation of vasectomy to be performed upon convicts in the state prison who had been twice convicted of a felony. After going into the history of similar punishments, the court says:

"When Blackstone wrote his Commentaries, he did not mention castration as one of the cruel punishments, quite likely for the reason that, with the advance of civilization, the operation was looked upon as too cruel, and was no longer performed. But each operation is to destroy the power of procreation. It is, of course, to follow the man during the balance of his life. The physical suffering may not be so great, but that is not the only test of cruel punishment; the humiliation, the degradation, the mental suffering are always present and known by all the public, and will follow him wheresoever he may go. This belongs to the Dark Ages. * * * Our conclusion is that the infliction of this penalty is in violation of the Constitution, which provides that cruel and unusual punishment shall not be inflicted."

Vasectomy in itself is not cruel; it is no more cruel than branding, the amputation of a finger, the slitting of a tongue, or the cutting off of an ear; but, when resorted to as punishment, it is ignominious and degrading, and in that sense is cruel. Certainly it would be unusual in Nevada. It may well be that it came in the minds of the men gathered in the constitutional convention of this

state that there could be unwise punishment without the infliction of physical pain; that legislators, under the stress of unusual conditions and peculiarly atrocious crime, might hastily adopt strange methods of repression, unknown to our criminal practice and harmful to the state.

Reformation of the criminal is a wise and humane purpose of punishment, to be disregarded only when the death penalty is inflicted. It needs no argument to establish the proposition that degrading and humiliating punishment is not conducive to the resumption of upright and self-respecting life. When the penalty is paid, when the offender is free to resume his place in society, he should not be handicapped by the consciousness that he bears on his person, and will carry to his grave, a mutilation which, as punishment, is a brand of infamy. True, rape is an infamous crime; the punishment should be severe; but even for such an offender the way to an upright life, if life is spared, should not be unnecessarily obstructed. It will not do to argue that, inasmuch as the death penalty may be inflicted for this crime, vasectomy, or any other similar mutilation of the body, cannot be regarded as cruel, because the greater includes the less. The fact that the extreme penalty is not exacted is evidence that the criminal is considered worthy to live, and to attempt reformation. For him, and for society, a fair opportunity to retrieve his fall is quite as important as the eugenic possibilities of vasectomy.

A decree will be entered in favor of the plaintiff, restraining the warden and the physician of the Nevada State Prison from performing the proposed operation of vasectomy on the person of the plaintiff.