Hobbs *et al.* v. The State.

No. 16,720.

## HOBBS ET AL. *v.* THE STATE.

CRIMINAL LAW.—*Indictment.*—*Duplicity.*—*Statute Enumerating Several Acts Equally Criminal.*—*Alleging Two or More of Such Acts in a Single Count.*— *Conviction on, When.*—*"White-Cap Act."*—Where a criminal statute provides that the doing of this or that, setting out several particulars, the doing of any of which shall constitute a crime, and the offender punished in a given way, an indictment based upon such a statute may allege, in a single count, the doing of any number of such acts, and the count will not be bad for duplicity, and the crime may be established by proving the defendant guilty of any one of such acts.

SAME. — *Statute Construed.* — *"White-Cap Act."*— *Constitutionality of.* — The "White-Cap Act" (section 362, Elliott's Supp.) is not unconstitutional as being in conflict with the provision of the Constitution against "cruel ·and unusual punishment." (Const., Art. I., section 16).

EVIDENCE.—*Impeaching Testimony.*—*Proof of Statements at Variance with Testimony.*—*Rebutting Testimony.*—Where a witness has been impeached by testimony that he has made statements contrary to his evidence in the case, the party who called such impeached witness may prove, in rebuttal, by the witness himself, or by other witnesses, that the witness, on other occasions, had stated the facts as he gave them in evidence.

APPEAL.—*Transcript of Record.*—*Recital of Matters not Properly in the Record Presents no Question.*—An order of a court convening the grand jury and the charge to the grand jury, when in no way connected with the trial of a cause, are not a part of the record of the cause, and their recital in the record, by the clerk, presents no question for the consideration of this court. ˑ

From the Dubois Circuit Court.

*J. L. Suddarth, W. A. Taylor* and *W. S. Hunter*, for appellants.

*T. H. Dillon, R. M. Milburn* and *W. E. Cox*, for appellee.

HACKNEY, J.—At the January term, 1892, of the Dubois Circuit Court, the appellee charged, by information, the appellants, France Hobbs, Daniel King, Samuel Spraggins, Thomas Smith, and five others, with the offense of riotous conspiracy as defined by what is known as the

"White-Cap Act." On the 28th day of April, 1892, the court sustained a motion to quash the first count of the information, and, upon leave of the court, the prosecutor filed an amended first count, charging that at, etc., on, etc., the defendants did "unlawfully and feloniously unite and combine together for the purpose of unlawfully and feloniously, in a rude, insolent, and angry manner, striking, beating and bruising one Henry G. Berger in the night time; and for said unlawful purpose said defendants did then and there disguise themselves by wearing masks and being otherwise disguised." A motion to quash the amended count was overruled. The defendants were tried by the court, and the appellants were convicted of riotous conspiracy, and fined five dollars each and sentenced to two years' imprisonment in the State's prison.

There are six assignments of error, and they will be disposed of in their order.

The first assignment seeks to present the question whether a prosecution may be maintained by information filed while the grand jury is in session. The transcript contains an order of the court convening and charging the grand jury on the 26th day of April, 1892, and the contention is that the session of the grand jury must be presumed to have continued to include April 28, 1892, the day on which the motion to quash was sustained and the amended first count was filed. The action of the court in charging the grand jury was not in any manner connected with the action against the appellants, and it finds its way to this court only by an unnecessary recital of the clerk. It is not a part of the record of proceedings in this cause as made by the trial court, and can not be considered. Elliott's Appellate Procedure, section 280; *Pattee* v. *State*, 109 Ind. 545. The question urged is not properly before us for another reason. Section 1733, R. S. 1881, provides that the question can be raised only upon a verified plea in abatement. See, also, *Hoover* v. *State*, 110 Ind. 349.

The second assignment and the argument of counsel upon it raise the question as to whether the amended count is bad for duplicity. The language of the statute (Elliott's Supp., section 362) is as follows : "If three or more persons shall unite or combine together for the purpose of doing any unlawful act in the night time, or for the purpose of doing any unlawful act while wearing white caps, masks, or being otherwise disguised, shall be deemed guilty of riotous conspiracy, and upon conviction thereof shall be imprisoned in the State prison not more than ten years nor less than two years, and fined in any sum not exceeding two thousand dollars." It is insisted that the statute defines two crimes, namely : one *a conspiracy to do an unlawful act in the night time,* and another *a conspiracy to do an unlawful act while wearing white caps, masks, etc.,* and it is claimed that the information charges both these offenses in said amended count.

We do not disagree with the proposition that an indictment or information may be bad for duplicity, as is held in *Knopf* v. *State,* 84 Ind. 316, cited by the appellants, but we do disagree with the contention that this information is bad for such cause.

Mr. Bishop, in his work on Criminal Procedure, section 436, volume 1, speaking of statutes of the class under consideration here, says : " It is common for a statute to declare, that, if a person does this, or this, or this, he shall be punished in a way pointed out. Now, if, in a single transaction, he does all the things, he violates the statute but once, and incurs only one penalty. Yet he violates it equally by doing one of the things. Therefore an indictment upon a statute of this kind may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction *and* where the statute has " or," and it will not be double, and it will be established at the trial by proof of any one of them." *Davis* v. *State,* 100 Ind. 154; *Fahnestock* v.

*State*, 102 Ind. 156; *Mergentheim* v. *State*, 107 Ind. 567, follow the rule as announced by Mr. Bishop, and its application to the statute under consideration and to the information in question is decisive of the point, and we must hold the count sufficient.

The third assignment of error and the argument of counsel under it raise the question of the correctness of the court's action in permitting the prosecuting witness and another to testify to statements of the prosecuting witness, made out of court, in corroboration of his testimony concerning the identity of the defendants. Witnesses for the defense had testified to statements of the prosecuting witness made out of court to the effect that he had not recognized the defendants on the night of the acts charged, and the testimony, to which objection is made, was in the State's rebuttal evidence. The appellants' counsel seem to have confused the rule as to the character of a re-examination and that as to proper rebuttal testimony, if we may judge from the cases cited in support of their contention. Indeed, the case of *Coffin* v. *Anderson*, 4 Blackf. 395, cited by them, holds that "If the witness has not been impeached, by proof of his having previously made statements inconsistent with his testimony, there seems to us to be no sufficient reason for the introduction of the corroborating evidence. But it is otherwise, if the witness has been thus impeached: it appears then to be proper to give the party who called the witness an opportunity to support him, by proving that the witness had, on other occasions, stated the facts to be as he represents them in his testimony. There are several cases directly in favor of the admission, under these circumstances, of this corroborating evidence. *Cooke* v. *Curtis*, 6 Harr. and Johns. 93; *Lessee of Packer* v. *Gonsalus*, 1 Serg. and Rawle, 536; * * *Lessee of Wright* v. *Deklyne*, 1 Peters' Cir. Ct. Rep. 203; *The People* v. *Vane*, 12 Wend. 78." We may add to the citations of Mr. Justice Blackford the

more recent cases of *Dailey* v. *State, ex rel.,* 28 Ind. 285;
*Brookbank* v. *State, ex rel.,* 55 Ind. 169; *Hodges* v. *Bales,*
102 Ind. 494; *Dodd* v. *Moore,* 92 Ind. 397; *Carter* v. *Carter,*
79 Ind. 466.   The appellants further contend that if cor-
roborative statements may be proven under such circum-
stances, the impeached witness should not be permitted to
testify to such statements.   We know of no statute or rule
declaring such witness incompetent, and, under the prac-
tice prevailing, the trial court or jury being the judges of
the credibility of the witnesses, and being enabled to weigh
his testimony in the light of his impeachment, we can see
no good reason for excluding him as a witness.

The fourth assignment of error is that the court erred in
overruling the motion in arrest of judgment.   Two ques-
tions are argued upon this assignment: *first,* that the
charge was invalid in that it was by information filed
when the grand jury was in session, and, *second,* that the
" White-Cap Act " is unconstitutional, as in violation of
section 16, article 1, of the State Constitution.   Section 61,
R. S. 1881.

The first of these points we have considered and passed
upon in deciding upon the action of the court in over-
ruling the motion to quash.

The second point, that the act is in violation of the pro-
vision of the Constitution, that " cruel and unusual pun-
ishment shall not be inflicted," has the merit of possessing
some originality; but the position assumed seems to be
without authority to support it.   We have been unable to
find but a single instance in which this provision of the
Constitution has been in question before this court, and
then the question was regarded as possessing no merit,
and was disposed of without serious consideration.   This
provision of the Constitution is found also in the Consti-
tution of the United States in the same words, and Mr.
Story, in his work on the Constitution, says " it is an exact
transcript of a clause in the Bill of Rights framed at the

revolution of 1688." He says, further, that "the provision would seem to be wholly unnecessary in a free government, since it is scarcely possible that any department of such a government should authorize or justify such atrocious conduct. It was, however, adopted as an admonition to all departments, * * * to warn them against such violent proceedings as had taken place in England in the arbitrary reigns of the Stuarts."

From this author, we learn that the excesses forbidden were of a time far from which our civilization has grown. Looking to an analysis of the provision in question, with reference to the causes of its origin, the weakness of the contention of the appellants will be apparent. The word " cruel," when considered in relation to the time when it found place in the Bill of Rights, meant not a fine or imprisonment, or both, but such as that inflicted at the whipping-post, in the pillory, burning at the stake, breaking on the wheel, etc. The word, according to modern interpretation, does not affect legislation providing imprisonment for life or for years, or the death penalty by hanging or electrocution. If it did, our laws for the punishment of crime would give no security to the citizen. Neither is punishment by fine or imprisonment "unusual."

Judge Cooley, in his work on Constitutional Limitations, says that the provision has application to that class of punishments which never existed in the State, or that class which the "public sentiment must be regarded as having condemned * * as 'cruel,' and any punishment which, if ever employed at all, has become altogether obsolete * * as 'unusual.'"

It may well be considered whether in this country, at the close of the nineteenth century, and in this State, where there are no common law crimes, and where the legislative department of the government is intrusted with the duty of defining crimes and prescribing punishments, this provision of the Constitution is not obsolete, except so

far as it may admonish the courts against the infliction of punishments so severe, as not to " fit the crime." The provision in question is that " cruel and unusual punishments shall not be *inflicted.*" Our law-making power does not *inflict* punishment; it but prescribes the limits of punishment to be *inflicted* by other powers. We think the act is not unconstitutional, but that it is one supported by every principle underlying a free government. If complaint may be made against the degree of punishment inflicted by the court below, that complaint can not, of right, be made by the appellants, for the punishment inflicted is not only the least provided by the law, but, for the outrage of which they were found guilty, it is highly tempered with mercy. The evidence for the State showed—and its sufficiency is not questioned in this court—that at the hour of midnight the appellants, while masked and otherwise disguised, violently broke into the residence of Berger, took him from his bed, and in his night clothes bound him to a tree, and with hickory switches one-half inch in diameter, several twisted together, beat and lacerated his bare back and limbs. What more "cruel and unusual punishment?"

As said by the court in *Ligan* v. *State,* 3 Heisk. (Tenn.) 159, a case in many respects similar to this: " Every home in this State is entitled to be protected from intrusion and outrage, whether it be the mansion of the wealthy or the hovel of the poorest man in the land. It should be the pride and boast of every citizen to make the law so effective in its protective power that we may be able to say of our country, as Canning said of the peasant homes of England, "that the winds and rains may enter them, but, without the warrant of law, the king dare not do it." We gladly adopt this language, and approve its force and wisdom as applied to the case in hand.

The fifth assignment is not argued, and the sixth is the same as the first.

Having disposed of all of the questions involved, we affirm the judgment of the lower court.

