[No. 10170.   Department One.   September 3, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v. PETER FEILEN, *Appellant*.[1]

CRIMINAL LAW—APPEAL—SENTENCE—PARTIAL VALIDITY. The fact that cruel punishment is inflicted does not warrant the reversal of a conviction, since the conviction would be affirmed with directions to enforce the legal part of the sentence.

CRIMINAL LAW—"CRUEL PUNISHMENT"—DISCRETION OF LEGISLATURE. The operation of vasectomy for the prevention of procreation, authorized by Rem. & Bal. Code, § 2287, cannot be judicially determined to be cruel punishment, in violation of Const., art. 1, § 14, where the sentence required it to be carefully and skillfully performed and there was no showing that it was attended with any marked degree of physical torture, suffering or pain; the rule being that the discretion of the legislature in fixing penalties will not be disturbed except in extreme cases.

Appeal from a judgment of the superior court for King county, Main, J., entered September 30, 1911, upon a trial and conviction of rape. Affirmed.

[1]Reported in 126 Pac. 75.

3—70 WASH.

*Sidney J. Williams* and *William R. Bell,* for appellant.

*John F. Murphy, Hugh M. Caldwell,* and *H. B. Butler,* for respondent.

CROW, J.—The defendant was convicted of the crime of statutory rape, committed upon the person of a female child under the age of ten years, and was sentenced to imprisonment for life in the state penitentiary. The final judgment and sentence from which he has appealed further ordered, adjudged and decreed that:

"An operation to be performed upon said Peter Feilen for the prevention of procreation, and the warden of the penitentiary of the state of Washington is hereby directed to have this order carried into effect at the said penitentiary by some qualified and capable surgeon by the operation known as vasectomy; said operation to be carefully and scientifically performed."

By his first assignment, appellant contends that the trial judge erred in submitting the case to the jury, for the reasons (1) that no degree of penetration was shown, and (2) that the testimony of his victim, the prosecuting witness, was not corroborated by such other evidence as tended to convict him of the crime charged. We find no merit in these contentions. The evidence will not be discussed or stated in this opinion, as no good purpose could be thereby served. We are convinced that, under the rule announced in *State v. Kincaid*, 69 Wash. 273, 124 Pac. 684, the evidence was sufficient to comply with the requirements of Rem. & Bal. Code, § 2437. We are also satisfied that the evidence afforded that degree and character of corroboration required by § 2155, Rem. & Bal.; and from all of the evidence we conclude that the only verdict that should have been returned was the one that the jury did return. The case was for the jury, and their verdict will not be disturbed.

Appellant was prosecuted under Rem. & Bal. Code, § 2436,

and the penalty of life imprisonment was properly imposed. Rem. & Bal. Code, § 2287, provides that:

"Whenever any person shall be adjudged guilty of carnal abuse of a female person under the age of ten years, or of rape, or shall be adjudged to be an habitual criminal, the court may, in addition to such other punishment or confinement as may be imposed, direct an operation to be performed upon such person, for the prevention of procreation."

It was under the authority of this section that the trial judge ordered the operation of vasectomy, and appellant, by his remaining assignments, contends that it is unconstitutional in that an operation for the prevention of procreation is a cruel punishment prohibited by art. 1, § 14 of the state constitution, which directs that "excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted." As the statute does not prescribe any particular operation for the prevention of procreation, the trial judge ordered that the operation known as vasectomy be carefully and skilfully performed. The question then presented for our consideration is whether the operation of vasectomy, carefully and skilfully performed, must be judicially declared a cruel punishment forbidden by the constitution. No showing has been made to the effect that it will in fact subject appellant to any marked degree of physical torture, suffering or pain. That question was doubtless considered and passed upon by the legislature when it enacted the statute. Appellant further contends that the imposition of the alleged cruel punishment as a part of the sentence necessitates a reversal of the judgment. This would not be true, even though we were to hold the operation to be an infliction of cruel punishment, as the judgment of conviction would have to be affirmed with directions to enforce the penalty of life imprisonment. When a sentence is legal in one part and illegal in another, it is not open to controversy that the illegal, if separable, may be disregarded and the legal enforced. *United*

*States v. Pridgeon*, 153 U. S. 48; *State v. Williams*, 77 Mo. 310, 313.

The crime of which appellant has been convicted is brutal, heinous, and revolting, and one for which, if the legislature so determined, the death penalty might be inflicted without infringement of any constitutional inhibition. It is a crime for which, in some jurisdictions, the death penalty has been imposed. 33 Cyc. 1518. If for such a crime death would not be held a cruel punishment, then certainly any penalty less than death, devoid of physical torture, might also be inflicted. In the matter of penalties for criminal offenses, the rule is that the discretion of the legislature will not be disturbed by the courts except in extreme cases.

"It would be an interference with matters left by the constitution to the legislative department of the government, for us to undertake to weigh the propriety of this or that penalty fixed by the legislature for specific offenses. So long as they do not provide cruel and unusual punishments, such as disgraced the civilization of former ages, and make one shudder with horror to read of them, as drawing, quartering, burning, etc., the constitution does not put any limit upon legislative discretion." *Whitten v. State*, 47 Ga. 297.

On the theory that modern scientific investigation shows that idiocy, insanity, imbecility, and criminality are congential and hereditary, the legislatures of California, Connecticut, Indiana, Iowa, New Jersey and perhaps other states, in the exercise of the police power, have enacted laws providing for the sterilization of idiots, insane, imbeciles, and habitual criminals. In the enforcement of these statutes, vasectomy seems to be a common operation. Dr. Clark Bell, in an article on hereditary criminality and the asexualization of criminals, found at page 134, vol. 27, Medico-Legal Journal, quotes with approval the following language from an article contributed to Pearson's Magazine for November, 1909, by Warren W. Foster, senior judge of the court of general sessions of the peace of the county of New York:

"Vasectomy is known to the medical profession as 'an
office operation' painlessly performed in a few minutes, under
an anaesthetic (cocaine) through a skin cut half an inch
long, and entailing no wound infection, no confinement to
bed. 'It is less serious than the extraction of a tooth,' to
quote from Dr. William D. Belfield, of Chicago, one of the
pioneers in the movement for the sterilization of criminals
by vasectomy, an opinion that finds ample corroboration
among practitioners. . . There appears to be a wonderful
unanimity of favoring opinion as to the advisability of the
sterilization of criminals and the prevention of their further
propagation. The Journal of the American Medical Associa-
tion recommends it, as does the Chicago Physicians' Club, the
Southern District Medical Society, and the Chicago Society
of Social Hygiene. The Chicago Evening Post, speaking of
the Indiana law, says that it is one of the most important re-
forms before the people, that 'rarely has a big thing come
with so little fanfare of trumpets.' The Chicago Tribune
says that 'the sterilization of defectives and habitual criminals
is a measure of social economy. The sterilization of convicts
by vasectomy was actually performed for the first time in
this country, so far as is known, in October, 1899, by Dr.
H. C. Sharp, of Indianapolis, then physician to the Indiana
State Reformatory at Jeffersonville, though the value of the
operation for healing purposes had long been known. He
continued to perform this operation with the consent of the
convict (not by legislative authority) for some years. In-
fluential physicians heard of his work, and were so favorably
impressed with it that they endorsed the movement, which re-
sulted in the passage of the law now upon the Indiana statute
books. Dr. Sharp has this to say of this method of relief
to society: 'Vasectomy consists of ligating and resecting a
small portion of the vas deferens. This operation is indeed
very simple and easy to perform; I do it without administer-
ing an anaesthetic, either general or local. It requires about
three minutes' time to perform the operation and the subject
returns to his work immediately, suffers no inconvenience,
and is in no way impaired for his pursuit of life, liberty, and
happiness, but is effectively sterilized.' "

Must the operation of vasectomy, thus approved by emi-
nent scientific and legal writers, be necessarily held a cruel
punishment under our constitutional restriction when applied

to one guilty of the crime of which appellant has been con-
victed? Cruel punishments, in contemplation of consti-
tutional restrictions, have been repeatedly discussed and de-
fined, although we have not been cited to, nor have we been
able to find, any case in which the operation of vasectomy
has been discussed. In *State v. Woodward*, 68 W. Va. 66,
69 S. E. 385, a recent and well-considered case which may be
consulted with much profit, Brannon, Justice, said:

"The legislature is clothed with power well nigh unlimited
to define crimes and fix their punishments. So its enactments
do not deprive of life, liberty or property without due pro-
cess of law and the judgment of a man's peers, its will is ab-
solute. It can take life, it can take liberty, it can take prop-
erty, for crime. 'The legislatures of the different states
have the inherent power to prohibit and punish any act as
a crime, provided they do not violate the restrictions of the
state and federal constitutions; and the courts cannot look
further into the propriety of a penal statute than to ascer-
tain whether the legislature had the power to enact it.' 12
Cyc. 136. 'The power of the legislature to impose fines and
penalties for a violation of its statutory requirements is
coeval with government.' *Mo. P. R. Co. v. Humes*, 115 U. S.
512. The legislature is ordinarily the judge of the exped-
iency of creating new crimes, and of prescribing penalties,
whether light or severe. *Commonwealth v. Murphy*, 165
Mass. 66, *Southern Express Co. v. Commonwealth*, 92 Va.
66. For such a fundamental proposition I need cite no
further authority. . . . What is meant by the provision
against cruel and unusual punishment? It is hard to say
definitely. Here is something prohibited, and in order to
say what this is we must revert to the past to ascertain what
is the evil to be remedied. Within the pale of due process the
legislature has power to define crimes and fix punishments,
great though they may be, limited only by the provision that
they shall not be cruel or unusual or disproportionate to the
character of the offense. Going back to ascertain what was
intended by this constitutional provision the history of the
law tells us of the terrible punishment visited by the ancient
law upon convict criminals. In our days of advanced Chris-
tianity and civilization this review is most interesting, yet
shocking and heartrending."

The learned jurist then proceeds with the narration of the cruel punishments mentioned in 4 Blackstone, at pages 92, 327, and 377, and after citing and discussing the English Bill of Rights; *Whitten v. State*, 47 Ga. 301; *Aldridge Case*, 2 Va. Cases, 447; *Wyatt's Case*, 6 Rand. 694; *In re Kemmler*, 136 U. S. 436, 446; *Wilkerson v. Utah*, 99 U. S. 130, 135; Cooley, Const. Lim. (4th ed.), 408; Wharton, Crim. Law (7th ed.), § 3405; *Hobbs v. State*, 133 Ind. 404, 32 N. E. 1019, 18 L. R. A. 774; *State v. Williams*, 77 Mo. 310; *Weems v. United States*, 217 U. S. 349; *O'Neil v. Vermont*, 144 U. S. 323, and other cases, says:

"In short, the text writers and cases say that the clause is aimed at those ancient punishments, those horrible, inhuman, barbarous inflictions."

In *In re O'Shea*, 11 Cal. App. 568, 105 Pac. 777, the California court of appeals for the first district said:

"Cruel and unusual punishments are punishments of a barbarous character and unknown to the common law. The word, when it first found place in the Bill of Rights, meant not a fine or imprisonment, or both, but such punishment as that inflicted by the whipping post, the pillory, burning at the stake, breaking on the wheel, and the like; or quartering the culprit, cutting off his nose, ears or limbs, or strangling him to death. It was such severe, cruel, and unusual punishments as disgraced the civilization of former ages, and made one shudder with horror to read of them. Cooley on Constitutional Limitations (7th ed.), p. 471 *et seq; State v. McCauley*, 15 Cal. 429; *Whitten v. State*, 133 Ind. 404, 32 N. E. 1019; *State v. Williams*, 77 Mo. 310. The legislature is ordinarily the judge of the expediency of creating new crimes, and prescribing the punishment, whether light or severe. *Commonwealth v. Murphy*, 165 Mass. 66, 42 N. E. 504, 52 Am. St. Rep. 496, 30 L. R. A. 734; *Southern Express Co. v. Com.*, 92 Va. 59, 22 S. E. 809, 41 L. R. A. 436."

Guided by the rule that, in the matter of penalties for criminal offenses, the courts will not disturb the discretion of the legislature save in extreme cases, we cannot hold that vasectomy is such a cruel punishment as cannot be inflicted

upon appellant for the horrible and brutal crime of which he has been convicted.

The judgment is affirmed.

PARKER, CHADWICK, and GOSE, JJ., concur.