THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN PÉREZ MÉNDEZ, Defendant and Appellant.

No. 16787.   Decided July 21, 1961.

*Francisco Coll Moya* for appellant. *J. B. Fernández Badillo, Attorney General,* and *Héctor R. Orlandi Gómez, Assistant Attorney General,* for appellee.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, and Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Juan Pérez Méndez was found guilty of three violations of § 4 of Act No. 220 of May 15, 1948 (Sess. Laws, p. 738, 33 L.P.R.A. § 1250), consisting in that on three different occasions "he had in his possession a slip of paper showing three-digit numbers, followed by a dash and other numbers to the right, and that he wrote down for the agent . . . certain numbers for the illegal game of *bolita*." He was sentenced to serve eight months' imprisonment in jail in each case, to be served concurrently. He appealed.

In the appeal taken he assigns four errors, which we turn to consider.

1. *Constitutionality of the Bolita Act.*—The appellant maintains that the Act under which he was prosecuted and found guilty is unconstitutional because, (a) it being a penal statute, the definition of the crime is so vague and indefinite as to violate the due process clause; and (b) there is no express reference in the title of the Act to the provisions of § 6 thereof (33 L.P.R.A. § 1252), nor is the provision in question, relative to the designation of the court which shall hear the violations of the law, germane to the subject matter expressed in the title.

Regarding the first ground which alleges vagueness and indefiniteness in the definition of the crime, it will suffice to say that we have rejected it on previous occasions, *People v. Mantilla,* 71 P.R.R. 35 (1950) ; *People v. Santos,* 71 P.R.R. 288 (1950) ; *People v. Tonje,* 71 P.R.R. 295 (1950), and that the appellant alleges nothing new in support of his attack on the constitutionality of the Act on this ground. See Collings, *Unconstitutional Uncertainty—An Appraisal,* 40 Cornell L.

Q. 195 (1955); *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U. Pa. L. Rev. 67 (1960).

Regarding the second ground, it is true that § 34 of the Organic Act of 1917 (L.P.R.A., Vol. 1, p. 94), which was in force at the time the law was enacted,[1] requires that the title of bills shall clearly express the subject matter embraced therein, and that any part thereof which is not expressed in the title shall be void. However, the purpose of this provision is "to prevent the inclusion of incongruous and unrelated matter in the same measure and to guard against inadvertence, stealth and fraud in legislation." *Rivera v. District Court*, 62 P.R.R. 491, 515 (1943). The title need not be an index of its contents, but merely that it be a signpost of its contents. *Sunland Biscuit Co., Inc. v. Minimum Wage Board*, 68 P.R.R. 345 (1948); *Rodríguez v. District Court*, 60 P.R.R. 894 (1942).

As correctly stated in the brief filed by counsel for the Attorney General, "[t]he manner or way of *prosecuting* the violators of the law, which is in fact the subject of the provision attacked by the appellant, is rather a question incidental to the proper administration of the law itself and need not necessarily be expressed in the title. The important thing is that the provisions of the law and the subject matter expressed in the title be closely related. In other words, it would have been sufficient for the lawmaker to declare public nuisances the games generally known as '*Bolita*,' '*Bolipool*,' and other related clandestine combinations, and to leave for the body of the law such measures as might be necessary and incidental to that end." *Cf. People v. Del Valle*, 60 P.R.R.

---

[1] The Constitution of the Commonwealth of Puerto Rico reproduced the same provision, couched in identical terms: ". . . . Every bill, except general appropriation bills, shall be confined to one subject, which shall be clearly expressed in its title, and any part of an act whose subject has not been expressed in the title shall be void." (Art. III, § 17, L.P.R.A., Vol. 1, p. 191.)

180 (1942) ; *M. Taboada & Co.* v. *Rivera, Com'r*, 51 P.R.R. 246 (1937).

The title of the *Bolita* Act [2] is sufficiently explicit to warn, not only the lawmakers but the public in general, that the purpose is to declare public nuisance the games mentioned therein, and to create several crimes in connection therewith. The result of this is the manner of prosecuting the violators, which it can not be said to be incongruous with the general subject matter of the law. *Laboy* v. *Corporación Azucarera, Etc.*, 65 P.R.R. 397 (1945) ; Note, 30 Chi.-Kent L. Rev. 387 (1952) ; Commentary, 24 U. of Chi. L. Rev. 722–28 (1957). Furthermore, these constitutional provisions should be liberally construed so as to reduce judicial interference with legislative action. Rudd, *"No Law Shall Embrace More Than One Subject,"* 42 Minn. L. Rev. 389, 393 (1958).

It is argued that since the prior act on the matter—Act

---

[2] The said title reads as follows:

"To declare a public nuisance the games generally known as *Bolita, Bolipul,* clandestine combinations, in connection with the pools or *bancas* of the racetracks of Puerto Rico, and clandestine lotteries; to direct the police to seize every mimeograph, device, material, or implement in use or which may be used for the manipulation or circulation of this business in the Island; to punish the violators of this Act; to prohibit the possession of any *papeleta, billete,* ticket, notebook, list of numbers or letters, slips, or implements which may be used for the purposes of the games of *Bolita, Bolipul,* clandestine combinations in connection with the pools or *bancas* of the racetracks of Puerto Rico and clandestine lotteries; to provide for the admission to bail on appeal after sentence for violations of this Act; to create, annexed to the Office of the Governor of Puerto Rico a special investigation force, additional to the Insular Police Force of Puerto Rico; to fix the duties thereof; to appropriate the sum of two hundred fifty thousand (250,000) dollars to cover all the expenses of said force for the fiscal year 1948–49; to provide for the annual appropriation of funds for the functioning of said force; to appropriate the necessary funds for the payment of the salaries of the members of the special force created by this Act from the date the same takes effect, and up to July 30, 1948, and for the acquisition of office supplies, as well as for any other expenses that may be necessary for the enforcement of the provisions hereof; to provide for the punishment of any person who lends himself to assist or to exert influence to save any person from prosecution, arrest or conviction for any violation of the provisions of this Act; to repeal Act No. 25, approved July 17, 1935, and for other purposes."

No. 25 of July 17, 1935 (Sp. Sess. Laws, p. 152)—provided that the cases for violation thereof would be filed in the municipal courts, and that if they were originally filed in the then district courts the accused had the right to be tried by a jury pursuant to § 178 of the Code of Criminal Procedure (34 L.P.R.A. § 462), and the present act confers exclusive jurisdiction on the superior courts and only by a court without a jury, this implies a change in the procedural rule which requires that it be explicitly set forth in the title. Assuming that this argument renders the foregoing inapplicable to the effect that the provision in question is one of administration of the law which is germane to the title thereof, the requirement would be sufficiently met because the present Act contains a specific clause repealing the prior act and express reference thereto is made in the title.

■ 2. *Corroboration of Undercover Agent.*—Appellant argues that it is necessary to corroborate the undercover agent's testimony because he is an accomplice. In *People* v, *Seda,* 82 P.R.R. 695 (1961), we considered and rejected an identical assignment. However, we wish to make it clear that what was said in that opinion regarding the absence of criminal intent on the part of the undercover agent was intended to answer a contention made by the defendant-appellant on that matter. If that had not been the situation, the above statement would have been unnecessary if we consider the nature of the crime punishable by Act No. 220.

■■ 3. *Cruel and Unusual Punishment.*—In the discussion of this error it is argued that since the Legislative Assembly has legalized certain games of chance, the penalty prescribed by the statute for the violator of the *Bolita* Act operates, in its application, as a cruel and unusual punishment. Truly, we do not see the logic of this contention. However, we have considered the question for the purpose of determining whether there is an actual violation of the

constitutional clause bearing on the imposition of cruel and unusual punishments.

Historically, this prohibition referred to barbarous and inhuman punishments such as burning at the stake, decapitation, dissection of the human body, and other forms of torture, and was directed to the form of punishment rather than to the term of duration. *Wilkerson* v. *Utah*, 99 U. S. 130 (1878); *Black* v. *United States*, 269 F.2d 38 (C.A. 9, 1959); *Hemans* v. *United States*, 163 F.2d 228 (C.C.A. 6, 1947). With the development of civilization and the abandonment of these inhuman practices, the precept has acquired a new significance and is directed to those "punishments so grossly and inordinately disproportionate to the offense committed as to shock the moral sense of the community." *Hobbs* v. *Warden, Maryland Penitentiary*, 163 A.2d 331 (Md. 1960); *People* v. *Elliot*, 112 N.E. 300 (Ill. 1916); *Weems* v. *United States*, 217 U. S. 349 (1910); Annot., 116 A.L.R. 212 (1938); 55 L.R.A. 1915C, at 558; and 35 L.R.A. 561 (1897). In other words, the punishment prescribed by the legislative power must be proportionate to the social problem which it purports to prevent. See *Espinosa* v. *Ramírez, Warden*, 72 P.R.R. 842 (1951), in which we applied this same criterion in connection with an indefinite sentence for failure to comply with an order to pay support money. In this respect, the courts have no control over a sentence which is within statutory limits, *Akers* v. *United States*, 280 F.2d 198 (C.A. 6, 1960); *Gallego* v. *United States*, 276 F.2d 914 (C.A. 9, 1960); and their duty is confined to determining whether the statute itself fixes an excessive punishment. *Pependrea* v. *United States*, 275 F.2d 325 (C.A. 9, 1960); *Smith* v. *United States*, 273 F.2d 462 (C.A. 10, 1959).

The imposition of fine and imprisonment is not per se a cruel and unusual punishment. *People ex rel. Bradley* v. *Illinois State Reformatory*, 36 N.E. 76 (Ill. 1894); *Hobbs* v. *State*, 32 N.E. 1019 (Ind. 1893); *State* v. *Foster*, 46 Atl. 833

(R. I. 1900). In *State* v. *Staub*, 162 So. 766 (La. 1935), it was held that a fine of not less than $200 nor more than $3,000, or imprisonment of not less than one year nor more than three years, for violation of a statute prohibiting clandestine lotteries, was not a cruel and unusual punishment. The same conclusion was reached in *Schroufe* v. *Commonwealth*, 133 S.W. 205 (Ky. 1911), with respect to a penalty imposed for an identical offense and which prescribed a fine from $500 to $1,000 *and* imprisonment from two to five years.

The errors assigned not having been committed, the judgment entered by the Superior Court, San Juan Part, on September 30, 1959, will be affirmed.

