256 P.3d 285 (2011)
171 Wash.2d 436
STATE of Washington, Respondent,
v.
Jack Irvin SIMS, Petitioner.
No. 83779-1.
Supreme Court of Washington, En Banc.
Argued November 9, 2010.
Decided May 5, 2011.
*287 John A. Hays, Attorney at Law, Longview, WA, for Petitioner.
Amie L. Hunter, Cowlitz County Prosecutor's Office, Kelso, WA, for Respondent.
OWENS, J.
¶ 1 Our state constitution provides a right of direct appeal in criminal cases. CONST. art. I, § 22. Here, Jack Irvin Sims sought to exercise his right of appeal by challenging only a particular condition of his sentence; he does not challenge his underlying conviction or the main components of his sentence. The State conceded that the specific sentencing condition that Sims challenged was unconstitutional and then argued that every part of Sims's sentence should be revoked and remanded to the trial court for reconsideration. To grant the State's request would constitute undue affirmative relief for the State and would unreasonably chill a defendant's right of appeal. We therefore hold that the remand should be for the limited purpose of revising the improper condition of Sims's sentence.

FACTS
¶ 2 On February 21, 2008, Sims pleaded guilty to one count of first degree child molestation. The basis of his plea was an isolated incident in which Sims assaulted an 11 year old girl. Sims entered his neighbor's home when he knew two children were there alone. He entered the bathroom where the girl was showering, washed her back, and then left the home.
¶ 3 The Department of Corrections recommended that Sims receive a special sex offender sentencing alternative (SSOSA)[1] sentence. Sims also requested a SSOSA. The recommendations were supported by an evaluation of Sims by Dr. Levi Migneault, a certified sex offender treatment provider. Relying on two classification tools, Dr. Migneault concluded that, with a sex offender treatment program, Sims would pose a very low risk of reoffending. Several of Sims's family members, a family friend, and a former work supervisor also spoke on Sims's behalf at his sentencing hearing, mostly attesting to Sims's community ties to Cowlitz County, where he has lived, worked, and raised a family for most of his life.
¶ 4 The State and the victim's family opposed a SSOSA, citing concerns about the impact on the victim should Sims remain in the community where the victim would potentially be forced to encounter him. Sims *288 and his wife's home of over 40 years is across the street from the victim's family home. The State also expressed concerns about whether Sims could sufficiently benefit from treatment.
¶ 5 At the sentencing hearing, the trial court recognized the concerns about the victim, stating, "I don't think this young girl should ever have to see [Sims] again in her life. And I will not allow him to remain in that community and grant SSOSA." Verbatim Report of Proceedings (VRP) at 37. The trial court nonetheless granted Sims's request for a SSOSA, imposing a sentence of 60 months to life to be suspended after 180 days of confinement so long as Sims then follows all of the conditions of his SSOSA. In addition to imposing a lifetime no-contact order and standard and crime-related conditions on Sims's sentence, the trial court ordered:
The Defendant shall not to [sic] reside in Cowlitz County [nor] enter Cowlitz County other than to travel from a location outside the county to a destination outside the county. If in Cowlitz County, the defendant shall not leave his transportation, and shall not enter the city limits of Castle Rock.
Clerk's Papers (CP) at 55. The trial court agreed with the victim's family that restricting Sims only from the city of Castle Rock was an insufficient geographic limitation. VRP at 38. Because the maximum term of Sims's sentence is life, the condition lasts for his lifetime.
¶ 6 Sims appealed, challenging only the sentencing condition banishing him from Cowlitz County and Castle Rock. The State responded by conceding that the condition was not narrowly tailored and should therefore be vacated. Without filing a notice of cross appeal, the State raised an additional issue in its reply brief, arguing that the case should be remanded for reconsideration of the SSOSA sentence.
¶ 7 The Court of Appeals accepted the State's concession that "Sims' banishment order is not narrowly tailored." State v. Sims, 152 Wash.App. 526, 532, 216 P.3d 470 (2009). The Court of Appeals also held that, on remand, the trial court retains discretion either to reimpose a SSOSA with constitutionally tailored conditions or deny a SSOSA altogether. Id. at 534, 216 P.3d 470. Sims petitioned this court for review, which we granted. State v. Sims, 168 Wash.2d 1010, 227 P.3d 852 (2010). We now review the question of the proper scope of remand in this case.

ISSUE
¶ 8 Upon vacating Sims's unconstitutional sentencing condition, did the Court of Appeals properly remand the case for complete resentencing, including reconsideration of the previously granted SSOSA, or should the remand be limited to revision of the sentencing condition?

ANALYSIS
¶ 9 "This court reviews the interpretation of court rules de novo." State v. Osman, 168 Wash.2d 632, 637, 229 P.3d 729 (2010). RAP 2.4 addresses the proper scope of appellate review. Under RAP 2.4(a), courts will, "at the instance of the appellant, review the decision or parts of the decision designated in the notice of appeal."
¶ 10 At the outset, we reject the implication by the Court of Appeals that any issue or remedy was properly before the court simply because Sims gave general notice of his intent to appeal his "judgment and sentence, and every part thereof," CP at 56. Sims, 152 Wash.App. at 534-35, 216 P.3d 470. Such a cursory conclusion fails to account for established limiting principles, including, for example, that an appellant is deemed to have waived any issues that are not raised as assignments of error and argued by brief. See, e.g., Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992). Sims indicated only a single assignment of errorthe sentencing condition banishing him from the county and limited his argument to that error. Since Sims would be deemed to have waived all issues except the single sentencing condition, it would be incongruous to use the rationale that Sims filed a broad notice of appeal to preserve, for the benefit of the State, issues waived by Sims.
*289 ¶ 11 RAP 2.4(a) specifically limits the circumstances under which a respondent may seek affirmative relief. It states:
The appellate court will grant a respondent affirmative relief by modifying the decision which is the subject matter of the review only (1) if the respondent also seeks review of the decision by the timely filing of a notice of appeal or a notice of discretionary review, or (2) if demanded by the necessities of the case. RAP 2.4(a) (emphasis added). The State did not file a notice of appeal, so there are two fundamental questions we must address. First, is the State's request for full resentencing affirmative relief? Second, if so, is the State excused from filing a notice of appeal because the relief it seeks is demanded by the necessities of this case?

I. The State's Request To Revoke Sims's SOSSA Constitutes Affirmative Relief

¶ 12 Affirmative relief "normally mean[s] a change in the final result at trial." 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.4 author's cmt. 3, at 174 (6th ed. 2004). While RAP 2.4(a) does not limit the scope of argument a respondent may make, it qualifies any relief sought by the respondent beyond affirmation of the lower court. See In re Arbitration of Doyle, 93 Wash.App. 120, 127, 966 P.2d 1279 (1998) (holding that, when a respondent "requests a partial reversal of the trial court's decision, he seeks affirmative relief"); cf. State v. McInally, 125 Wash.App. 854, 863, 106 P.3d 794 (2005) ("The State is entitled to argue any grounds to affirm the court's decision that are supported by the record, and is not required to cross-appeal."). "[N]otice of cross-review is essential if the respondent `seeks affirmative relief as distinguished from the urging of additional grounds for affirmance.'" Robinson v. Khan, 89 Wash.App. 418, 420, 948 P.2d 1347 (1998) (quoting Phillips Bldg. Co. v. An, 81 Wash.App. 696, 700 n. 3, 915 P.2d 1146 (1996)). Here, Sims sought reversal of part of the trial court's order. Rather than arguing to affirm the order below, the State conceded error and sought more extensive reversal than what Sims requested as relief. Because the State is seeking partial reversal of a trial court order, not just advancing an alternative argument for affirming the trial court, it is seeking affirmative relief.
¶ 13 We also note that the trial court granted Sims a SSOSA over the objection of the State. The State is now essentially asking to reopen the argument it lost at Sims's sentencing hearing. To allow that would expose Sims to loss of his SSOSA sentence despite the lack of an allegation that he has failed to comply with the requirements of his sentence.[2] Loss of a SSOSA is a significant consequence to defendants. See State v. Canfield, 120 Wash.App. 729, 733-34, 86 P.3d 806 (2004) (observing that a defendant "received the greatest penalty the court was empowered to give at that juncturerevocation of his suspended sentence and imposition of the terms of [his original] sentence"), rev'd on other grounds, 154 Wash.2d 698, 116 P.3d 391 (2005). Considering the significance of a SSOSA disposition to a defendant and that the State, rather than arguing to affirm, is requesting a more extensive reversal than Sims sought in his appeal, we find that the State is seeking affirmative relief.

II. The Necessities of this Case Do Not Require Affirmative Relief for the State

¶ 14 An appellate court can still grant affirmative relief to a respondent who fails to file a cross appeal if the necessities of the case demand it. RAP 2.4(a). In Sims's case, the Court of Appeals found necessity for full resentencing because "the trial court exercised its discretion to grant the SSOSA in reliance on its mistaken understanding (which Sims made no attempt to correct at trial) that it could banish Sims from Cowlitz County."[3]Sims, 152 Wash.App. at 535, 216 *290 P.3d 470. While factually true, we disagree that this necessitates affirmative relief for the State. We find that the SSOSA condition can be narrowly tailored without disturbing the SSOSA sentence. Accordingly, we hold that the necessities of the case demand only that the trial court have the opportunity to revise the sentencing condition. To hold otherwise, would unnecessarily chill a defendant's right of direct appeal.
¶ 15 Washington courts generally apply the necessities provision of RAP 2.4(a) when the petitioner's claim cannot be considered separately from issues a respondent raises in response. In City of Seattle v. Marshall, 54 Wash.App. 829, 830-31, 776 P.2d 174 (1989), a defendant filed a limited appeal, challenging only a superior court ruling that, despite a finding that his affidavit of prejudice was timely filed in municipal court, his remedy is limited to resentencing, thus precluding a withdrawal of his guilty plea. The Court of Appeals found that in Marshall's case, because the available remedy is necessarily linked to the determination of timeliness, the appeal "compels review of the underlying ruling on timeliness as well, despite the City's failure to request cross review." Id. at 831, 776 P.2d 174. The court found that the affidavit was not timely filed and that the remedy Marshall requested was therefore unavailable. Id. at 833-34, 776 P.2d 174. In contrast, this court denied respondents' affirmative relief on the grounds of necessity in Caritas Services, Inc. v. Department of Social & Health Services, 123 Wash.2d 391, 416, 869 P.2d 28 (1994), rejecting an argument by respondents to extend the relief granted them by the trial court. The trial court struck legislative amendments that it found violated the impairment of contracts and due process clauses of the state and federal constitutions. Id. at 395, 869 P.2d 28. Without cross-appealing, respondents argued that, based on errors in the trial court's remedy, further legislative provisions needed also to be stricken. Id. at 416, 869 P.2d 28. This court held that, because the underlying law had a severability clause, the necessities of the case did not demand affirmative relief for the respondents. Id.; see N. Coast Elec. Co. v. Selig, 136 Wash.App. 636, 646-47, 151 P.3d 211 (2007) (concluding that the necessities of the case did not entitle a respondent to affirmative relief from a summary judgment order that respondent did not appeal). We therefore look to whether the challenged condition could be considered separately from the underlying SSOSA sentence.
¶ 16 The grant of a SSOSA sentence is entirely at a trial court's discretion, so long as the court does not abuse its discretion by denying a SSOSA on an impermissible basis. State v. Osman, 157 Wash.2d 474, 482 n. 8, 139 P.3d 334 (2006) (noting that "courts have only specified the defendant's race, sex, or religion as impermissible bases for a court's denial of a nonstandard sentence."). The Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW, requires the trial court to impose certain conditions of the SSOSA and allows the court to impose certain discretionary conditions. RCW 9.94A.670(5), (6). Among the discretionary conditions, a trial court may order that the offender "remain within prescribed geographical boundaries." RCW 9.94A.670(6)(c). In this case, the trial court clearly associated its grant of a SSOSA with the now-challenged geographic condition, stating that it "will not allow [Sims] to remain in that community and grant SSOSA." VRP at 37 (stating this twice). The trial court clarified that the order would ban Sims from the entire county, not just the city, stating again that the victim should "not worry about seeing him. Otherwise, I can't grant SSOSA in this case." Id. at 38. The State argues that, because the trial court articulated a connection between its discretionary grant of a SSOSA and the condition banishing Sims from the county, the two are inextricably linked.
¶ 17 In State v. Badger, 64 Wash.App. 904, 910, 827 P.2d 318 (1992), the Court of Appeals, based on the discretionary nature of SSOSAs, remanded the case because the trial court erroneously believed it did not have the *291 option of imposing a 60-day jail sentence rather than revoking the defendant's SSOSA. The Badger court concluded that "we remand to permit the court to exercise its discretion." Id. Analogously, in the context of exceptional sentences, this court held that, where a trial court improperly relied on an aggravating factor to impose an exceptional sentence, the proper remedy is to remand for resentencing when it is impossible to say that the trial court, absent its improper consideration, would still have imposed the same sentence. State v. Pryor, 115 Wash.2d 445, 456, 799 P.2d 244 (1990), overruled in part on other grounds by State v. Ritchie, 126 Wash.2d 388, 395, 894 P.2d 1308 (1995).
¶ 18 The trial court's error in Badger, however, is fundamentally different from the conceded error in Sims's case. In Badger, the trial court misconstrued its lawful, discretionary authority regarding the revocation of a SSOSA. The trial court in Sims's case clearly knew it had the option to grant or not grant a SSOSA and even that it could apply a geographical restriction. Its error was more isolated, pertaining only to the lawful breadth of the particular condition.
¶ 19 A more comparable case from the Court of Appeals is State v. Goss, 56 Wash. App. 541, 784 P.2d 194 (1990). In Goss, the trial court ordered that the conditions of the defendant's SSOSA should run consecutively, but the Court of Appeals found that the law required that the conditions run concurrently. Id. at 544, 784 P.2d 194. Despite the trial court's error, the Court of Appeals remedy did not suggest the possibility of revoking the defendant's SSOSA when he appealed the consecutive nature of its conditions. Id. The Goss court concluded that "[f]or the reasons stated herein, this case is remanded with instructions that the sentence conditions are to run concurrently." Id. at 545, 784 P.2d 194. The error in Sims's case is more like that in Goss because it is related only to a SSOSA condition, which can arguably be considered and revised separately from the underlying decision to grant a SSOSA.
¶ 20 Pragmatically, sentencing conditions can be reviewed separately from the underlying sentence, and, in this case, it is clear that the sentencing condition can be revised to maintain its protective purpose while being made constitutional. The State concedes that the sentencing condition is unconstitutional because it is not narrowly tailored. One logical deduction from this concession is that there is in fact a way to achieve the objective of the condition by narrower means. We infer that the purpose of the condition was to protect the victim. See VRP at 37 (The victim "should [n]ever have to see [Sims] again in her life."); cf. State v. Schimelpfenig, 128 Wash.App. 224, 229-30, 115 P.3d 338 (2005) (comparing the compelling state interest of victim protection with facts underlying a banishment order to protect the mental well-being of a murdered victim's family). Because the purpose of the condition can still be achieved, limiting the remand to revision of the condition does not subvert the trial court's original decision to grant a SSOSA.
¶ 21 We also note the potential chilling effect on a defendant's state constitutional right to appeal if the State is allowed to seek revocation of a SSOSA in this case. Because SSOSA sentences are of such high value to defendants, they would be unlikely to risk appealing even abhorrently unlawful or unconstitutional sentencing conditions for fear of risking the underlying SSOSA sentence.[4] The facts of this case highlight this chilling effect. After being made aware that the State would be seeking full resentencing, Sims included in his supplemental brief a conditional request to withdraw his appeal, stating that
defendant herein would rather abandon his appeal rather than go to a new sentencing hearing to reconsider the original decision to impose a SSOSA sentence in spite of the fact that the trial court imposed an obviously unconstitutional banishment order.
Suppl. Br. of Appellant at 13.
¶ 22 The Court of Appeals noted that "Sims' `chilling appeals' argument is compelling," *292 but, in addition to ruling for the State, found that Sims's request to withdraw his appeal "does not meet RAP 18.2's requirements" for withdrawal. Sims, 152 Wash. App. at 533, 535, 216 P.3d 470. RAP 18.2 provides in part that "[t]he appellate court may, in its discretion, dismiss review of a case on the motion of a party who has filed a notice of appeal." While the Court of Appeals may decline to exercise its discretion in that manner, the rule itself did not prevent the court from allowing Sims to withdraw his appeal. Regardless of its procedural error on this point, we find that the Court of Appeals undervalued how compelling Sims's argument about the chilling effect is, especially in light of the alternative remedy to remand for narrow tailoring of the condition, which does not carry the same chilling risks.
¶ 23 Finally, while we reviewed this case within the framework of the RAPs, it is notable that, in cases prior to the enactment of the SRA, this court on several occasions affirmed that "`[w]hen a sentence is legal in one part and illegal in another, it is not open to controversy that the illegal, if separable, may be disregarded and the legal enforced.'" Gossett v. Smith, 34 Wash.2d 220, 222-23, 208 P.2d 870 (1949) (quoting State v. Feilen, 70 Wash. 65, 67, 126 P. 75 (1912)); see State v. Loux, 69 Wash.2d 855, 857, 420 P.2d 693 (1966), overruled in part on other grounds by State v. Moen, 129 Wash.2d 535, 545, 919 P.2d 69 (1996); In re Habeas Corpus of Clark, 24 Wash.2d 105, 113, 163 P.2d 577 (1945). All these cases involved arguments by defendants that an error in sentencing required fuller reconsideration of their sentences, but, in each case, the court struck the offending provision and maintained the remainder of the sentence. These cases have not been overturned, nor does the SRA contravene the rule established in those cases that an unlawful, separable part of a sentence may be vacated without disturbing the lawful part. See RCW 9.94A.585. By this rule or by application of RAP 2.4, we reach the same result in this case.
¶ 24 Several factorsespecially the potential chilling effect on defendants' constitutional right to appeal, the fact that this sentencing condition is separable from the sentence, and the fact that the objective of the challenged condition in this case can be achieved through a narrowly tailored conditionestablish that the necessities of the case do not require affirmative relief for the State. Absent necessity, the State's request for the affirmative relief of a completely new resentencing hearing was not properly before the Court of Appeals because the State did not file a cross appeal. See RAP 2.4(a).

CONCLUSION
¶ 25 The proper remedy in this case is resentencing for the limited purpose of narrowly tailoring the geographic condition of Sims's SSOSA sentence that currently banishes him from Cowlitz County. A broader remedy was not properly before the Court of Appeals because such a remedy is affirmative relief for the State, for which the State did not file a cross appeal and which is not demanded by the necessities of the case. We remand to the trial court for resentencing for the purpose of making the vacated banishment condition constitutionally sound.
WE CONCUR: CHARLES W. JOHNSON, GERRY L. ALEXANDER, TOM CHAMBERS, MARY E. FAIRHURST, JAMES M. JOHNSON, Justices, and RICHARD B. SANDERS, Justice Pro Tem.
STEPHENS, J. (dissenting).
¶ 26 This case is about preserving a trial court's discretion to grant or deny a special sex offender sentencing alternative (SSOSA), not whether the State is entitled to affirmative relief on appeal. The majority's focus on RAP 2.4(a) distracts from what should be a straightforward resolution of this case that involves sending Sims back to square one before the SSOSA was imposed. While the majority agrees that Sims should be returned to the trial court for resentencing, it believes we should tie the trial court's hands and require it to retain a sentence it never intended to impose. Because the majority's analysis wholly discounts the trial court's discretion and relies on a misguided notion about chilling the right to appeal, I respectfully dissent.
*293 ¶ 27 "The decision to impose a SSOSA is entirely within the trial court's discretion." State v. Osman, 157 Wash.2d 474, 482, 139 P.3d 334 (2006) (citing State v. Onefrey, 119 Wash.2d 572, 575, 835 P.2d 213 (1992)). A trial court considers several factors in deciding to grant or deny a SSOSA, including whether the suspended sentence is too lenient in light of the nature of the offense, whether the defendant would present a risk to the community and the victim, and whether the victim believes a SSOSA is an appropriate disposition of the charge. RCW 9.94A.670(4). As part of its decision to grant a SSOSA in the first instance, a trial court may also exercise its discretion to impose certain sentencing conditions. RCW 9.94A.670(6).
¶ 28 There can be little doubt in this case that the trial court exercised its discretion to grant a SSOSA because it believed it could banish Sims from the community. The Court of Appeals correctly observed that the banishment condition and the decision to grant the SSOSA were "inextricably linked." State v. Sims, 152 Wash.App. 526, 533, 216 P.3d 470 (2009). The trial court's reasoning on the record confirms this conclusion:
[T]he only way I would grant SSOSA, because what I have heard, isand it's not it's an issue which neither one of you [counsel] dealt with and I am not sure how you are going to deal with it but I don't think this young girl should ever have to see him [Sims] again in her life. And I will not allow him to remain in that community and grant SSOSA.
I think you havethat's the issue in this case. I don't think that she should have to see him. I don't think she should have to see him drive by. I don't think that she should be walking down the street and just happen to see him. That presents a problem for you but I am not going to leave him in the community and allow him to have SSOSA. I willI think that given the nature of this offense that I would grant SSOSA. Not if he remains in the community where she has to see him.
. . . .
. . . I know it sounds like it is banishment but on the other hand, it's to protect that young girl. And your [defense counsel's] current plans are that he live in home and stay in his residence. That can't happen. Because that forces the family who was innocent in this case to move to protect their child from revisiting this issue and I am not going to do that.
Verbatim Report of Proceedings at 37, 41. Simply put, the trial court's belief that it could banish Sims from the community was the key reason it exercised its discretion to grant the SSOSA.
¶ 29 This exercise of discretion is meaningless if an appellate court can simply redline the conditions of a SSOSA while preventing the trial court from taking a second look at the SSOSA itself. In appealing his sentence, Sims designated in his notice of appeal the entire "judgment and sentence, and every part thereof." Clerk's Papers at 56. Yet the majority would restrict our review and the trial court's discretion on remand to considering only the invalid condition of the SSOSA. This results in a sentence that the trial court never intended and, based on the record, would never have imposed.[1] Sims appealed his sentence, and the possibility that he may need to be resentenced inheres in that.
¶ 30 The majority offers several reasons why the SSOSA must remain in place, none of which are persuasive. First, the majority believes that the SSOSA is not properly before us because Sims did not assign error specifically to the SSOSA. Majority at 288. It is true that we generally restrict our review to issues raised in assignments of error that are properly briefed and argued. But "this court has inherent authority to consider issues not raised by the parties if necessary to reach a proper decision." Alverado v. *294 Wash. Power Supply Sys., 111 Wash.2d 424, 429, 759 P.2d 427 (1988); see also RAP 12.1(b) (explaining that appellate court can raise an issue sua sponte). A complete review of Sims's sentence is necessary here because the SSOSA was expressly predicated on the invalid banishment condition. Sims cannot insulate the SSOSA from our reviewafter designating it in his notice of appealsimply by neglecting to include it in his assignments of error.
¶ 31 Nor does RAP 2.4(a) limit either the scope of our review or the trial court's discretion on remand. Seeking resentencing when an imposed sentence is invalid is not a request for "affirmative relief." The majority says that the State is requesting partial reversal of the trial court's judgment. Majority at 289. But this is true only if we view the banishment condition and the SSOSA as two separate decisions of the trial court. We should not artificially bifurcate what can only be described as a single discretionary sentencing decision. And because the trial court would not have granted the SSOSA but for the banishment condition, Sims's appeal calls into question the validity of the entire sentence. A full resentencing is the natural consequence of Sims's decision to appeal his sentence, not the result of the State's request for "affirmative relief."
¶ 32 Even if RAP 2.4(a) were applicable, the "necessities of the case" would demand that the SSOSA remain on the table. The majority posits that the "necessities of the case" require review of a claim only when it cannot be considered separately from the issues properly raised on appeal. Majority at 289. The majority then concludes that, because the banishment condition can be narrowly tailored without disturbing the SSOSA, the "necessities of the case" do not require revisiting the SSOSA. Majority at 291. This conclusion ignores the discretionary nature of a SSOSA. While it may be possible in practical terms to adjust a SSOSA condition without reconsidering the SSOSA, it is not possible to do so without infringing on the trial court's sentencing discretion. We cannot pretend to preserve the discretionary features of a SSOSA while at the same time mandating that the trial court retain a sentencing alternative it never would have granted.
¶ 33 The majority's analysis of RAP 2.4(a) is problematic for another reason. According to the majority, so long as the State cross appeals, the trial court can properly reconsider the SSOSA in addition to adjusting the SSOSA condition. See majority at 288-89. The effect of the majority opinion in future cases is clear: each time a defendant challenges a condition of the SSOSA, the State will cross appeal to preserve the SSOSA for review and reconsideration. So while Sims may get the benefit of a SSOSA crafted by an appellate court in this case, future appellants will not.
¶ 34 Finally, the majority gives undue weight to the alleged chilling effect on Sims's right to appeal. The majority accepts Sims's argument at face value but does not explain how the chilling effect is removed when the State does what the majority's analysis requires and files a cross appeal. To the extent there is a chilling effect from the prospect of full resentencingand I am not convinced there isthe same chilling effect would necessarily be present when the State does cross appeal. And if, as the majority asserts, the chilling effect is enough to shield the SSOSA from review, then a trial court will simply never be able to revisit its discretionary decision to grant a SSOSA.
¶ 35 This reveals an internal inconsistency in the majority's decision. On one hand, the majority chastises the State for failing to preserve the SSOSA for review by cross appealing under RAP 2.4(a). On the other hand, even if the State had cross appealed, the chilling effect on Sims's right to appeal would prevent reconsideration of the SSOSA. While the majority does not say it, under its analysis there are apparently no circumstances in which a SSOSA challenged as containing an invalid condition may be revisited on remand.[2]
*295 ¶ 36 Given the majority's resolution, it does not need to address Sims's alternative request to withdraw his appeal. Sims made this request in his briefing at the Court of Appeals, Suppl. Br. of Appellant at 13, and he renewed the request at oral argument before this court, Wash. Supreme Court Oral Argument, State v. Sims, No. 83779-1 (Nov. 9, 2010), at 13 min., 25 sec., audio recording by TVW, Washington State's Public Affairs Network, available at http:www.tvw.org. The Court of Appeals rejected this request, citing only RAP 18.2, which concerns withdrawal before argument with the defendant's consent. Nothing in the appellate rules, however, limits our ability to grant a request to withdraw after argument. If my resolution were to prevail, and given that the remedy issue in this case arose belatedly on appeal, in fairness I would grant Sims's request to withdraw his appeal.
¶ 37 I respectfully dissent.
I CONCUR: BARBARA A. MADSEN, Chief Justice.
NOTES
[1] A SSOSA is a special procedure authorized by the Sentencing Reform Act of 1981, chapter 9.94A RCW, whereby a sentencing judge may suspend a sex offender's felony sentence if the offender meets certain eligibility criteria defined in the statute. RCW 9.94A.670(2).

State v. Canfield, 154 Wash.2d 698, 701 n. 1, 116 P.3d 391 (2005).
[2] Sims's SSOSA is still fully revocable for the remainder of his life, at the trial court's discretion, if ever it is proved that he has violated a condition of his sentence. See State v. McCormick, 166 Wash.2d 689, 705-06, 213 P.3d 32 (2009).
[3] The Court of Appeals made much of the fact that Sims did not object to the now-challenged condition at his sentencing hearing. Sims, 152 Wash.App. at 533-35, 216 P.3d 470. While it is true that this prevented the trial court from considering a SSOSA in light of a lawful, narrowly tailored condition, challenges to unlawful sentences may be raised for the first time on appeal. See State v. Bahl, 164 Wash.2d 739, 744, 193 P.3d 678 (2008).
[4] There is no competing risk that defendants will dupe a court into granting a SSOSA, relying on an unconstitutional sentencing condition, because the invited error doctrine would preclude the defendant from appealing the sentencing condition in that case. See In re Pers. Restraint of Tortorelli, 149 Wash.2d 82, 94, 66 P.3d 606 (2003) ("The invited error doctrine prohibits a party from setting up an error in the trial court then complaining of it on appeal.").
[1] The majority speculates that "[b]ecause the purpose of the condition [i.e., protection of the victim] can still be achieved, limiting the remand to revision of the condition does not subvert the trial court's original decision to grant a SSOSA." Majority at ____. Even assuming a more narrowly tailored geographical restriction is possible, we cannot say it will accomplish the trial court's intended result to protect the victim. Only the trial court can make that judgment, which is why the decision is vested in the trial court's sound discretion.
[2] Limiting appellate review to redlining invalid SSOSA conditions might therefore create the unintended incentive for defendants not to resist especially restrictive sentencing conditions in order to obtain a SSOSA, then challenge them on appeal.