[No. 31012-1-II.   Division Two.   June 29, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID ELLIS SCHIMELPFENIG, *Appellant*.

*Suzanne L. Elliott,* for appellant.

*H. Steward Menefee, Prosecuting Attorney,* and *Gerald R. Fuller, Deputy,* for respondent.

¶1 QUINN-BRINTNALL, C.J. — David Schimelpfenig appeals a banishment order imposed following his conviction for first degree murder.[1] The order prohibits Schimelpfenig from residing in Grays Harbor County for the remainder of his life so as to protect the mental well-being of the murdered victim's family. We vacate the order because it is not sufficiently tailored and therefore impermissibly infringes on Schimelpfenig's right to travel.

## FACTS

¶2 A jury found Schimelpfenig guilty of the first degree murder of Marjorie Benner. Schimelpfenig murdered Benner inside her Hoquiam, Grays Harbor County, Washington home. Schimelpfenig, who was an acquaintance of Benner's son, had lived two blocks away from Benner and had routinely performed yard work for her. As part of its sentence, the trial court ordered that, upon release from prison, Schimelpfenig not reside in Grays Harbor County or have any contact with members of the Benner family for the remainder of his life. The court imposed these restrictions because "there will always be [Benner] family members here that need not be reminded of" Schimelpfenig. Report of Proceedings (Sept. 29, 2003) at 17-18.

¶3 Schimelpfenig contends that the court's order banishing him from Grays Harbor County violates his constitutional right to travel. He does not dispute that a court may

---

[1] In the unpublished portion of this opinion, we address Schimelpfenig's challenges to his conviction and exceptional sentence. We affirm the conviction but vacate the exceptional sentence and remand for resentencing.

impose restrictions on his right to travel, but he argues that the ban is unnecessarily broad. At oral argument before this court, the State conceded that the order should be vacated. Under the facts of this case, we agree with Schimelpfenig and accept the State's concession.

## ANALYSIS

¶4 An order banishing an individual from a large geographical area is bound to raise both societal and legal concerns. At a minimum, dumping convicts on a city, county, or state neighbor is bound to raise public policy concerns. *See McCreary v. State*, 582 So. 2d 425, 427-28 (Miss. 1991). Banishment orders conjure memories from "the script of some old Grade-B cowboy movie where the sheriff tells the bad guy to 'get out of Dodge.' " *Predick v. O'Connor*, 2003 WI App 46, 260 Wis. 2d 323, 325, 660 N.W.2d 1. At the most, banishment orders encroach on an individual's constitutional right to travel, which includes the right to travel within a state. *Shapiro v. Thompson*, 394 U.S. 618, 630-31, 634, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969); *Eggert v. City of Seattle*, 81 Wn.2d 840, 845, 505 P.2d 801 (1973). Because of its constitutional implications, we apply strict scrutiny in reviewing a banishment order. *Thompson*, 394 U.S. at 634. To survive such review, the order must be narrowly tailored to serve a compelling governmental interest. *Thompson*, 394 U.S. at 634.

¶5 Although the courts of this state have addressed the right to travel in the context of statutes criminalizing certain behavior,[2] few cases have addressed geographical restrictions imposed by a court. In *Halsted v. Sallee*, 31

---

[2] *See, e.g., State v. Lee*, 135 Wn.2d 369, 391, 957 P.2d 741 (1998) (in upholding anti-stalking law, noting that "[i]ndividuals have a constitutional right to move about as long as they are not committing a crime"); *City of Seattle v. McConahy*, 86 Wn. App. 557, 571-72, 937 P.2d 1133 (upholding ordinance barring persons from sitting on sidewalks because the ordinance was restricted to certain areas during specific hours), *review denied*, 133 Wn.2d 1018 (1997); *State v. J.D.*, 86 Wn. App. 501, 507-09, 937 P.2d 630 (1997) (striking down juvenile curfew statute which was not narrowly tailored to prevent crime or protect juveniles from being the victims of crime).

Wn. App. 193, 639 P.2d 877 (1982), Division Three addressed a restraining order, intended to protect children from their mentally unstable father, which required the father not to travel north of a central Washington town. The court concluded that although Washington had a compelling interest in protecting the children, the ban was not sufficiently tailored because an order enjoining communication or contact could serve the same purpose. *Halsted*, 31 Wn. App. at 197. And in *State v. McBride*, 74 Wn. App. 460, 873 P.2d 589 (1994), Division Three upheld a statute permitting a court to ban individuals convicted of drug trafficking from the areas where they had trafficked drugs if such areas had a proven pattern of drug trafficking activity. The court there found it key that the statute had crime prevention and rehabilitative aims. *McBride*, 74 Wn. App. at 465-67.

¶6 Because Washington courts have not routinely addressed the issue presented in this case, a review of cases from other jurisdictions is helpful. In *Larson v. State*, 572 So. 2d 1368 (Fla. 1991), the trial court banished the defendant from Tallahassee for five years after he moved to that city for the sole purpose of tampering with a witness. The Florida Supreme Court upheld the order because he had not shown a legitimate need to visit Tallahassee and because the banishment order could be amended if such a need arose. *Larson*, 572 So. 2d at 1371-72.

¶7 In *People v. Brockelman*, 933 P.2d 1315 (Colo. 1997), the Colorado Supreme Court upheld a defendant's two-year banishment from two neighboring cities after the defendant brutally assaulted his girl friend and violated criminal and civil restraining orders. The court concluded that the banishment was appropriate because the girl friend lived and worked in the area and the evidence presented at trial raised serious concerns about her continuing safety. *Brockelman*, 933 P.2d at 1317. In *State v. Nienhardt*, 196 Wis. 2d 161, 537 N.W.2d 123 (1995), the defendant was banned from a city after she had been convicted of repeatedly stalking and harassing an individual who lived in the city. The appellate court upheld the ban, noting that the

defendant did not reside in the city or have a reason to visit it and the ban was essentially a protective order for the victim. *Nienhardt*, 196 Wis. 2d at 168-70. And in another Wisconsin case with similar facts, the court upheld the defendant's banishment from a county after she had stalked and harassed a family for several years, had assaulted certain family members, and had repeatedly violated no-contact orders. *Predick*, 260 Wis. 2d at 336-37.

¶8 But courts have struck down banishment orders. In *State v. Franklin*, 604 N.W.2d 79, 83-84 (Minn. 2000), the court concluded that an order banishing the defendant from Minneapolis was impermissible because the defendant had substantial ties to the city and the order was not related to his crime of trespassing into a building located on the outskirts of the city. In *Johnson v. State*, 672 S.W.2d 621, 623 (Tex. App. 1984), the court concluded that a countywide ban for a defendant convicted of unauthorized use of a motor vehicle was inappropriate because it was not sufficiently related to his rehabilitation and would leave him broke and unemployed. In *People v. Beach*, 147 Cal. App. 3d 612, 620-23, 195 Cal. Rptr. 381 (1983), the defendant was convicted of shooting an intruder on her property, and the trial court imposed an order banishing her from the community because she was a "marked woman." The appellate court vacated the order because it would have displaced the defendant from her home of 24 years and was more likely to impede rehabilitation than to promote it. And in *Edison v. State*, 709 P.2d 510 (Alaska Ct. App. 1985), the court struck down a probation condition prohibiting the defendant, who had been convicted of driving a snow machine while intoxicated, from entering a village where he resided and was self-employed as a commercial fisherman. The court found the condition to be unconstitutional because it was not related to the nature of the offense, was unnecessarily severe and restrictive, and did not appear to be reasonably related to the defendant's rehabilitation. *Edison*, 709 P.2d at 512.

¶9 These cases reveal several guiding principles for reviewing banishment orders. To determine whether a

specific geographic restriction permissibly infringes on a defendant's right to travel, a sentencing court should consider the following nonexclusive factors: (1) whether the restriction is related to protecting the safety of the victim or witness of the underlying offense; (2) whether the restriction is punitive and unrelated to rehabilitation; (3) whether the restriction is unduly severe and restrictive because the defendant resides or is employed in the area from which he is banished; (4) whether the defendant may petition the court to temporarily lift the restriction if necessary; and (5) whether less restrictive means are available to satisfy the State's compelling interest. *See Brockelman*, 933 P.2d at 1319. Consideration of such factors ensures that the use of a geographical restriction will always turn on a careful analysis of the facts, circumstances, and total atmosphere of the case. *Predick*, 260 Wis. 2d at 336.

¶10 Here, the sentencing court stated that its reason for banning Schimelpfenig for life from residing in Grays Harbor County was to prevent Benner's relatives from being reminded of him. We contrast this understandable purpose[3] with one aimed at preventing an individual from becoming the victim of threatened crime, which has been found to be a *compelling* state interest. *Schall v. Martin*, 467 U.S. 253, 264, 104 S. Ct. 2403, 81 L. Ed. 2d 207 (1984). It is this protective interest that may also make banishment appropriate when the defendant represents a continuing threat to his victim or witnesses even after release. *See State v. Lee*, 135 Wn.2d 369, 389-92, 957 P.2d 741 (1998) (upholding anti-stalking law against right-to-travel claim). But we need not decide whether the interest advanced by the order is compelling, for even if it is, the order is not narrowly tailored to serve that interest.

---

[3] We note that the trial court's ban forbids Schimelpfenig only from residing in the county. It does not prohibit him from entering the county for purposes such as work or recreation. Thus, it appears that the ban does not even serve the sentencing court's purpose of preventing contact between the Benner family and Schimelpfenig.

¶11 Schimelpfenig will likely remain in prison for more than 20 years and will not be released until he is in his 60s.[4] There is no evidence in the record that Schimelpfenig ever posed a threat to Benner's family or that he has desired continued contact with them when he is released. There also is no evidence that the Benner family frequents so much of the 1,917 square miles of Grays Harbor County as to justify a countywide ban. Moreover, the record suggests that Schimelpfenig has some form of mental disability and, as a result of this disability, he has lived with his family in Grays Harbor County for his entire life. Banning him for life from residing in the county is therefore likely to heavily burden his family and be counterproductive to rehabilitation. Under these facts, the banishment order fails strict scrutiny.

¶12 In so ruling, we do not imply that countywide or other types of jurisdictional prohibitions will always be inappropriate. Relying on the well-defined boundaries of a county or city fosters the uniform enforcement of such a restriction. But the propriety of such restrictions must turn on the facts of each case. The facts of this case suggest that a more narrowly-tailored restriction would satisfactorily protect the Benner family from being reminded of their loss. We emphasize that the trial court could, and did, continue to prohibit Schimelpfenig from having contact with the Benner family and require him to stay a specified distance away from their homes or workplaces. But because the sentencing court's order forbidding Schimelpfenig from residing in Grays Harbor County is too broad for its stated purpose, we vacate it.

¶13 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder

---

[4] As discussed in the unpublished portion of this opinion, we reverse Schimelpfenig's exceptional sentence and remand for resentencing. Schimelpfenig, who was 41 when convicted, has a standard range of 240 to 320 months.

shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN and VAN DEREN, JJ., concur.