216 P.3d 470 (2009)
STATE of Washington, Respondent,
v.
Jack Irvin SIMS, Appellant.
No. 37773-0-II.
Court of Appeals of Washington, Division 2.
September 22, 2009.
*471 John A. Hays, Attorney at Law, Longview, WA, for Appellant.
Amie L. Hunt, Hall of Justice, Cowlitz Prosecuting Attorneys Office, Kelso, WA, for Respondent.
HUNT, J.
¶ 1 Jack Sims appeals the trial court's sentencing order prohibiting him from entering or residing in Cowlitz County. He argues that his banishment from Cowlitz County violates his right to due process and equal protection under the United States Constitution Fifth and Fourteenth Amendments.[1] The State concedes this error but argues that we should remand this matter to the trial court for broader resentencing and reconsideration of the trial court's suspension of the confinement portion of Sims' sentence under the Special Sex Offender Sentencing Alternative (SSOSA).[2] We accept the State's concession, vacate Sims' sentence, and remand to the trial court for resentencing.

Facts

I. Molestation
¶ 2 On May 22, 2007, 11-year-old EM and her 10-year-old brother, SM, were home alone getting ready for school. While EM was taking a shower, Jack Sims, a neighbor and family friend, entered their house and went into EM's bathroom. Sims asked EM if she needed help. Although EM declined assistance, Sims opened the shower door, took her sponge, washed her back, and then left.
¶ 3 EM immediately told her parents about the incident, and her father contacted the police. SM told the police that he had noticed Sims in the house that morning and had seen him enter EM's bathroom. The police interviewed Sims on May 29. Sims denied both having entered EM's home and having touched EM while she showered.

II. Guilty Plea and Sentencing
¶ 4 The State charged Sims with one count of first degree child molestation and, in the alternative, one count of fourth degree assault with sexual motivation. On February 21, 2008, Sims pleaded guilty to first degree child molestation.[3] The trial court accepted Sims' plea, placed Sims in the custody of the Cowlitz County Corrections Department, and ordered the Department of Corrections (DOC) to arrange a mandatory pre-sentence information report.
¶ 5 Sims underwent a psychosexual evaluation with a state-certified sex offender treatment provider. The treatment provider determined that Sims would be amenable to treatment and a "very low risk" for recidivism if the trial court allowed him to remain within the community, under DOC supervision, while participating in a sex offender treatment program. Based on Sims' psychosexual evaluation, in its pre-sentence investigation report, the DOC recommended (1) imposing a life sentence with 51 months of mandatory minimum confinement before consideration for release; and (2) suspending the confinement portion of the sentence under the SSOSA option, with the condition that Sims serve nine months in jail.
¶ 6 At sentencing, the State recommended incarceration for 60 months to life, community custody for life, a sex offender evaluation, a requirement that Sims follow all treatment, a no-contact order, costs, and restitution. The State argued against a SSOSA.[4] Sims *472 contended that he presented a minimal risk of reoffending and requested a SSOSA.
¶ 7 The trial court expressed concerns about giving Sims a SSOSA, noting that it did not "think this young girl should ever have to see him again in her life. And [the trial court would] not allow him to remain in that community and grant SSOSA." Report of proceedings (RP) at 37. The following relevant dialogue occurred at sentencing:
DEFENSE COUNSEL: I take it the Court would impose a geographic condition that he not enter the city limits of Castle Rock while she is residing there.
. . . .
THE STATE: Your honor, I'm not sure that will take care of the issue. The family is indicating no and I am not familiar ... with Castle Rock to be able to say one way or another. I do agree that the issue where he will live will create the biggest problem. And I think it can even go so far as Cowlitz County.
TRIAL COURT: I'll grant that. Can't live in Cowlitz County. I know it is a problem but you know, it's a problem of his making. She shouldn't have toshe should be free to go anywhere in this county, go to the mall, go anywhere in this County and not see him. And not worry about seeing him. Otherwise, I can't grant SSOSA in this case because the treatment is fine in terms of addressing some very deep, serious issues for him. I will give 180 days in jail but if he resides in Cowlitz County she's got a sentence.
RP at 38.
¶ 8 The trial court sentenced Sims to life in prison, with 60 months of minimum mandatory confinement before consideration for release, but it suspended this sentence in imposing a SSOSA. The trial court also entered an Order on Additional Conditions that provided:
IT IS HEREBY ORDERED:
The Defendant shall not to [sic] reside in Cowlitz County, not to [sic] enter Cowlitz County other than to travel from a location outside the county to a destination outside the county. If in Cowlitz County, the defendant shall not leave his transportation, and shall not enter the city limits of Castle Rock, per the order of the court on April 24, 2008.[[5]]
Clerk's Papers (CP) at 55. Sims did not object to these additional conditions.
¶ 9 Under the suspended SSOSA sentence's terms, Sims must remain under community custody for the greatest of (1) the length of the suspended sentence, (2) the length of the maximum term sentence under RCW 9.94A.712, or (3) three years. Because the trial court sentenced Sims under RCW 9.94A.712 for a Class A felony with a maximum term of life, Sims will remain under community custody for his entire life.
¶ 10 Sims appeals his sentence, challenging in particular the above SSOSA conditions, which he contends constitutes banishment from Cowlitz County for life.

ANALYSIS

I. Banishment
¶ 11 Sims argues that that trial court's order banishing him from Cowlitz County and the City of Castle Rock for life violates his rights to due process and equal protection under the Fifth and Fourteenth Amendments of the United States Constitution. Conceding that the trial court did not narrowly tailor the banishment order, the State asks us to vacate Sims' sentence and to remand to the trial court for resentencing. We agree.
¶ 12 Banishment orders encroach on an individual's constitutional right to travel, which includes the right to travel within a state. State v. Schimelpfenig, 128 Wash. App. 224, 226, 115 P.3d 338 (2005) (citing Shapiro v. Thompson, 394 U.S. 618, 630-31, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), overruled in part on other grounds by Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). Because of these constitutional implications, courts apply strict *473 scrutiny in reviewing a banishment order. Thompson, 394 U.S. at 634, 89 S.Ct. 1322. To survive such review, the trial court must narrowly tailor the order to serve a compelling governmental interest.[6]Schimelpfenig, 128 Wash.App. at 226, 115 P.3d 338; see also State v. Alphonse, 147 Wash.App. 891, 197 P.3d 1211 (2008) (Division One holding that a banishment order prohibiting a defendant from entering a city, except for legal or judicial reasons, impermissibly impinged upon his right to travel within the state), review denied, 166 Wash.2d 1011, 210 P.3d 1018 (2009).
¶ 13 In Schimelpfenig, we held that a lifetime banishment order prohibiting the defendant from residing in Grays Harbor County, to protect the mental well-being of a murdered victim's family, unconstitutionally impinged upon the defendant's right to travel. 128 Wash.App. at 224, 115 P.3d 338. Because Schimelpfenig's banishment order failed the strict scrutiny test, we vacated it. Id. at 230, 115 P.3d 338. Nevertheless, we noted that a more narrowly-tailored geographical restriction could adequately protect the victim's family. Id.
¶ 14 In Alphonse, Division One of our court vacated a banishment order prohibiting the defendant from entering the city of Everett after he made repeated harassing phone calls to Everett police officers. 147 Wash.App. at 911, 197 P.3d 1211. The court held that although the order served a compelling government interest, "less restrictive means were available to serve the State's interest, and the restriction was unrelated to rehabilitation." Id. at 910, 197 P.3d 1211. The court vacated the banishment order and remanded to the trial court with instructions about how to tailor the order more narrowly.[7]Id. at 911, 197 P.3d 1211.
¶ 15 Similarly, Sims' banishment order is not narrowly tailored. The trial court prohibited Sims from entering Cowlitz County to protect the mental well-being of EM and her family. As in Schimelpfenig, a more narrowly-tailored geographical restriction might adequately protect EM. On remand, the trial court could follow the suggestions listed in Alphonse to modify the no-contact order, such as entering an order restricting Sims' contact with EM and her family. Because a more narrowly tailored geographical restriction could potentially protect EM and her family, we accept the State's concession and remand this matter to the trial court for re-sentencing. If the trial court decides to reimpose a SSOSA, it may include more narrowly-tailored geographical restrictions.

II. Resentencing
¶ 16 The State asks us to remand to the trial court for complete resentencing, including reconsideration of Sims' SSOSA. Sims argues that we should not remand for broad resentencing because (1) the SSOSA portion of his sentence is not properly before us,[8] and (2) allowing the trial court to reconsider whether to grant a SSOSA will impermissibly chill criminal appeals. Although Sims' "chilling appeals" argument is compelling, we agree with the State that, under these narrow circumstances, the trial court should be allowed to reconsider the SSOSA on remand.

A. SSOSA Inextricably Linked to Banishment Order
¶ 17 The trial court has discretion to impose a SSOSA. State v. Osman, 157 Wash.2d 474, 482, 139 P.3d 334 (2006). Here, the trial court's decision to grant Sims a SSOSA was inextricably linked to the banishment order. The trial court explicitly *474 stated that it would not "leave [Sims] in the community and allow him to have SSOSA." RP at 37. Thus, the trial court chose to exercise its discretion and to grant Sims a SSOSA with the understanding that it could validly exclude Sims from the community.
¶ 18 Had Sims objected to the scope of the banishment order at trial, the trial court could have decided then whether it could have narrowly tailored the order to protect the victim and her family, who were Sims' neighbors, such that the trial court would still have found the SSOSA acceptable. But Sims' failure to object to the scope of the banishment order precluded the trial court's considering a more narrow tailoring; therefore, we hold that on remand the trial court retains the discretion either to reimpose a SSOSA with constitutionally tailored conditions acceptable to the trial court or to deny a SSOSA altogether.

B. Sims Appealed Entire Sentence
¶ 19 Sims argues that we may not vacate the SSOSA because only the banishment condition of his sentence is before us on review. More specifically, he contends that (1) in asking for broad resentencing, the State seeks affirmative relief; and (2) under the Rule of Appellate Procedure (RAP) 2.4(a), we may not grant affirmative relief to the State because it did not file a timely notice of cross-appeal. We disagree.
¶ 20 RAP 2.4(a) provides:
(a) Generally. The appellate court will, at the instance of the appellant, review the decision or parts of the decision designated in the notice of appeal or, subject to RAP 2.3(e), in the notice for discretionary review, and other decisions in the case as provided in sections (b), (c), (d), and (e). The appellate court will, at the instance of the respondent, review those acts in the proceeding below which if repeated on remand would constitute error prejudicial to respondent. The appellate court will grant a respondent affirmative relief by modifying the decision which is the subject matter of the review only (1) if the respondent also seeks review of the decision by the timely filing of a notice of appeal or a notice of discretionary review, or (2) if demanded by the necessities of the case.

(Emphasis added.)
¶ 21 In his notice of appeal, Sims designated "the judgment and sentence, and every part thereof." Spindle. Thus, his entire judgment and sentence, including the SSOSA, are properly before us on review, despite his wishes to the contrary. Furthermore, because the trial court exercised its discretion to grant the SSOSA in reliance on its mistaken understanding (which Sims made no attempt to correct at trial) that it could banish Sims from Cowlitz County, "the necessities of the case" demand that we vacate Sims' entire sentence and remand for resentencing. RAP 2.4(a).

III. Sims' Request to Dismiss Appeal Rather Than to Allow Resentencing
¶ 22 Finally, Sims requests that we allow him to withdraw his appeal if we determine that we must remand to the trial court to reconsider his SSOSA. We deny this request.
¶ 23 We may, in our discretion and on motion made before oral argument, dismiss review of a case on stipulation of all parties. RAP 18.2. In a criminal case, RAP 18.2 also requires the defendant's written consent. Sims' request, which he embedded in his supplemental brief and made contingent on our ruling in a particular manner, does not meet RAP 18.2's requirements. Further, Sims cites no legal authority for contingently withdrawing an appeal. RAP 10.3(a)(6) (requiring argument with citation to legal authority). We hold that Sims may not contingently withdraw his appeal.
¶ 24 We vacate Sims' sentence, including the banishment order, and remand to the trial court for resentencing.
We concur: BRIDGEWATER, P.J., and QUINN-BRINTNALL, J.
NOTES
[1] U.S. Const. amend. V; U.S. Const. amend. XIV
[2] RCW 9.94A.670.
[3] The trial court dismissed the fourth degree assault charge.
[4] EM's family asked the trial court not to impose a SSOSA, while Sims' family requested a SSOSA.
[5] A bench order further clarified the conditions of Sims' banishment, allowing "the defendant to enter Cowlitz County for the purposes of responding to court summons for SSOSA related probation violations." Supplemental Clerk's Papers (Supp. CP at 1).
[6] Schimelpfenig and Alphonse do not hold that a banishment order created to prevent a victim or her family from being reminded of the defendant constitutes a compelling government interest. Schimelpfenig notes that a compelling state interest is "one aimed at preventing an individual from becoming the victim of threatened crime." Schimelpfenig, 128 Wash.App. at 229, 115 P.3d 338. But because the order here is not narrowly tailored and the State concedes the error, we do not address whether the order fulfilled a compelling government interest.
[7] Division One noted that the trial court could (1) restrict the defendant's contact with the victim and his family; (2) require the defendant to stay a specified distance from the victim; and (3) restrict any uninitiated contact with any member of the city's police force, absent emergency circumstances. Alphonse, 147 Wash.App. at 911, 197 P.3d 1211.
[8] Sims asserts that he is appealing only the banishment order, not his entire sentence.