# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 49145-1-II |
| GREG STEVEN MARTINEZ, | PUBLISHED OPINION |
| Petitioner. | |

BJORGEN, C.J. — Greg Martinez seeks relief from personal restraint imposed through his conditional release from confinement by the Indeterminate Sentencing Review Board (ISRB). Martinez was in confinement after pleading guilty to one count of first degree child rape. He argues that the ISRB does not have authority to prohibit him from entering into a geographical area as a condition of community custody.

We hold that the ISRB has authority to prohibit an offender from entering into a geographical area as a condition of community custody under the circumstances of this case. However, we also hold that the condition as applied to Martinez unconstitutionally infringes on his right to travel because it does not include a clear process for requesting modification of the condition in light of changed circumstances. Consequently, we grant the petition.

## FACTS

On August 8, 2006, Martinez[1] pled guilty to one count of first degree child rape based on sexual contact he had with his nine year old nephew in May 2005 in Thurston County. The superior court entered a lifetime no-contact order prohibiting Martinez from contacting his

_____

[1] The record notes that Greg Martinez is also known as Greg Tower.

victim. On September 27, Martinez was granted a Special Sex Offender Sentencing Alternative (SSOSA).

On September 21, 2009, Martinez's SSOSA was revoked "after four separate violation processes," and he was placed in the custody of the Department of Corrections (DOC). Br. of Resp't at 64, Att. F; Br. of Resp't at 93, Att. I. The sentencing court did not require Martinez to remain within or outside a specified geographical boundary as a condition of community custody.

RCW 9.95.420(1)(a) grants the ISRB authority to release a convicted sex offender based on predictions of sexual dangerousness. Specifically, under RCW 9.95.420(3)(a), the ISRB

> shall order the offender released, under such affirmative and other conditions as the board determines appropriate, unless the board determines by a preponderance of the evidence that, despite such conditions, it is more likely than not that the offender will commit sex offenses if released.

RCW 9.95.420(2) requires the ISRB to impose the conditions and instructions provided for in former RCW 9.94A.704 (2014), if the ISRB determines that an offender is suitable for community custody.

On June 14, 2014, after holding a hearing, the ISRB determined that Martinez was suitable for release and directed the preparation of an Offender Release Plan (ORP). On April 17, 2015, Kristi Busch, a hearings investigator, prepared a report based on Martinez's proposed ORP and recommended that the ISRB require Martinez to "not enter Thurston County" without prior approval. Br. of Resp't at 102, Att. L. Busch noted in her report that the victim liaison assigned to Martinez's case had community concerns related to Thurston County. Martinez's ORP contained comments from his counselor that "[Martinez] cannot [be] release[d] to his County of Origin due to Victim Concerns." Br. of Resp't at 106, Att. L.

2

On April 30, 2015, the ISRB approved Martinez's ORP, and he was released to community custody on June 4. As a condition of community custody, the ISRB required Martinez to "not enter Thurston County without prior written approval of [his] CCO [community corrections officer] and the ISRB." Br. of Resp't at 115, Att. O.

In early 2016, Martinez's counsel contacted CCO Steven Pyka to request a change to Martinez's condition of community custody barring him from entering Thurston County. Martinez requested the change because he wanted to live with his parents and work for their pest control business in Thurston County. Martinez also anticipated that his parents would be able to assist him with his mental conditions, including several learning disorders and Asperger's Syndrome. Pyka informed Martinez's counsel that a change to his community custody condition "would never happen," and that "[t]he Board would have to approve that request." Reply Br. of Pet'r at 1. Martinez's counsel then contacted the ISRB, which told counsel that a request to modify conditions of community custody "must come from the CCO." Reply Br. of Pet'r at 1. Martinez's counsel again contacted Pyka, but Pyka responded that "he would not start this process." Reply Br. of Pet'r at 1.

On June 6, 2016, Martinez filed a motion to modify his conditions of community custody in Thurston County Superior Court. Martinez argued that the ISRB did not have authority under former RCW 9.94A.704 to prohibit him from entering a particular geographical area as a condition of community custody. On June 29, the superior court transferred Martinez's motion to modify to our court for consideration as a personal restraint petition (PRP). On February 2, 2017, we issued an order stating that the issues raised in the PRP were not frivolous and transferred the PRP to a panel for further consideration.

3

## ANALYSIS

### I. STANDARD OF REVIEW

To obtain relief through a PRP, a petitioner must generally "establish that a constitutional error has resulted in actual and substantial prejudice, or that a nonconstitutional error has resulted in a fundamental defect which inherently results in a complete miscarriage of justice." *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 298, 88 P.3d 390 (2004). The Supreme Court has explained that "[t]hese threshold requirements are justified by the court's interest in finality, economy, and integrity of the trial process and by the fact that the petitioner has already had an opportunity for judicial review." *Id*. However, if a petitioner did not have an opportunity for prior judicial review, then the heightened threshold requirements applicable to PRPs do not apply, and he need only demonstrate that he is restrained under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c). *Id*. at 299. Martinez has not had a prior opportunity for judicial review of his allegedly improper condition of community custody. Therefore, he must establish that (1) he is restrained and (2) his restraint is unlawful.

A petitioner is under a restraint if he or she has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to immediate confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case. RAP 16.4(b). The condition forbidding Martinez from entering Thurston County limits his freedom and therefore places him under restraint.

Under RAP 16.4(c), a restraint is unlawful if it falls into one of the categories listed in that rule. Of these, the one relevant to this appeal is RAP 16.4(c)(6): "the conditions or manner

of the restraint of petitioner are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington."

## II. AUTHORITY TO IMPOSE GEOGRAPHICAL RESTRICTIONS

The ISRB argues that it may require Martinez to "not enter Thurston County without prior written approval of [his] CCO and the ISRB," as a condition of community custody under former RCW 9.94A.704(3)(b) and RCW 9.95.420(3). Br. of Resp't at 12; Br. of Resp't at 115, Att. O. We agree that the ISRB has the authority to impose this condition under RCW 9.95.420(3).

A.     Principles of Statutory Construction

Although the State claims our review is for an abuse of discretion, we review a question of statutory interpretation de novo as a question of law. *Bostain v. Food Express, Inc*., 159 Wn.2d 700, 708, 153 P.3d 846 (2007). In interpreting a statute, we strive to effectuate the legislature's intent. *Bostain*, 159 Wn.2d at 708. "If the statute's meaning is plain, we give effect to that plain meaning as the expression of the legislature's intent." *Bostain*, 159 Wn.2d at 708. "Plain meaning is determined from the ordinary meaning of the language used in the context of the entire statute in which the particular provision is found, related statutory provisions, and the statutory scheme as a whole." *Bostain*, 159 Wn.2d at 708. We do not interpret statutes so as to render any portion meaningless or superfluous. *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). Similarly, we do not add words to statutes where the legislature has chosen not to include them. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). If the plain meaning of a statute is subject to multiple

reasonable interpretations, we resolve the ambiguity by using other indicia of legislative intent. *Bostain*, 159 Wn.2d at 708-09.

B.        Former RCW 9.94A.704(3)(b)

Former RCW 9.94A.704(3)(b) states:

> (3) If the offender is supervised by [DOC], the [DOC] shall at a minimum instruct the offender to:
> . . . .
> (b) Remain within prescribed geographical boundaries.

The statute by its plain terms requires DOC to instruct an offender to stay within a particular area.

One could argue that requiring Martinez to remain outside Thurston County is equivalent to requiring him to remain within the boundaries of all other areas. However, former RCW 9.94A.703(3)(a) (2009) states:

> (3) . . . . As part of any term of community custody, the court may order an offender to:
> (a) Remain within, or outside of, a specified geographical boundary.

In this subsection the legislature expressly authorizes a court to order an offender to remain outside an area, as well as within an area. This is one of the related statutory provisions we may consider in determining plain meaning. *Bostain*, 159 Wn.2d at 708. Against this backdrop, the ISRB's proposed interpretation of former RCW 9.94A.704(3)(b) would require us to either add words to that statute, or render the distinction between "[r]emain[ing] within, or outside of" an area as articulated in former RCW 9.94A.703(3)(a) meaningless. Therefore, we hold that former RCW 9.94A.704(3)(b) does not authorize the ISRB to require an offender to remain outside of a particular geographic boundary.

No. 49145-1-II

C.      RCW 9.95.420(3)(b)

RCW 9.95.420(3)(b) states, in part:

(b) . . . . The [ISRB] shall order the offender released, under such affirmative and other conditions as the [ISRB] determines appropriate.

From the plain language of this statute, the ISRB is authorized to impose "other conditions as the [ISRB] determines appropriate," when releasing an offender. When adequately supported by the evidence, a condition requiring an offender to remain outside a county in which the victim resides or is present, for example, may be "appropriate" in carrying out the ISRB's authority. Therefore, we hold that RCW 9.95.420(3) authorizes the ISRB to require an offender to remain outside of a particular geographic boundary if appropriate under governing legal standards.

## II.  RIGHT TO TRAVEL

Although we hold that the ISRB has authority to require an offender to remain outside a geographic boundary, such authority is subject to constitutional limitations, including the right to travel. While we generally limit our discussion to the issues raised by the parties, we have "the authority to determine whether a matter is properly before the court, to perform those acts which are proper to secure fair and orderly review, and to waive the rules of appellate procedure when necessary to 'serve the ends of justice.'" *State v. Aho*, 137 Wn.2d 736, 740-41, 975 P.2d 512 (1999) (quoting RAP 1.2(c)). We may raise an issue sua sponte and rest our decision on that issue. *Aho*, 137 Wn.2d at 741; RAP 12.1(b). We typically request additional briefing on an issued raised sua sponte, but "if briefing is not necessary to full and fair resolution of the issue,

7

we will . . . decide the issue without additional briefing." *Aho*, 137 Wn.2d at 741.[2] The IRSB did brief this issue.

Martinez's community custody condition requiring him to remain outside of Thurston County is akin to an order banishing him from Thurston County. We have previously noted that "[a]t a minimum, dumping convicts on a city, county, or state neighbor is bound to raise public policy concerns," and "[a]t the most, banishment orders encroach on an individual's constitutional right to travel, which includes the right to travel within a state." *State v. Schimelpfenig*, 128 Wn. App. 224, 226, 115 P.3d 338 (2005). The order banishing Martinez from Thurston County thus has a clear potential to infringe Martinez's constitutional right to travel. For that reason, we exercise our discretion under *Aho* and RAP 1.2(c) to address, without additional briefing, whether that right has been violated.

In *Eggert v. City of Seattle*, 81 Wn.2d 840, 845, 505 P.2d 801 (1973), our state Supreme Court recognized a right to travel applicable to intrastate as well as interstate movement. In reaching this conclusion the court relied on federal decisions such as *Shapiro v. Thompson*, 394 U.S. 618, 629-30, 634, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969), *overruled in part by Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)), which recognized a constitutional right to travel freely among the states, subject only to restrictions that were shown to be necessary to promote a compelling governmental interest. *Eggert* similarly held that a

---

[2] Of similar effect is RAP 12.1(b), which states, "If the appellate court concludes that an issue which is not set forth in the briefs should be considered to properly decide a case, the court may notify the parties and give them an opportunity to present written argument on the issue raised by the court."

penalty on the right to travel may be sustained only if shown to serve a compelling state interest. *Eggert*, 81 Wn.2d at 848.

*Schimelpfenig*, in turn, specified that we apply strict scrutiny when reviewing a banishment order and that to satisfy that scrutiny, the order must be narrowly tailored to serve a compelling governmental interest. 128 Wn. App. at 226. *Schimelpfenig* identified five guiding principles to aid our review of a banishment order in determining whether the order impermissibly infringes on an individual's right to travel, including:

> (1) whether the restriction is related to protecting the safety of the victim or witness of the underlying offense; (2) whether the restriction is punitive and unrelated to rehabilitation; (3) whether the restriction is unduly severe and restrictive because the defendant resides or is employed in the area from which he is banished; (4) whether the defendant may petition the court to temporarily lift the restriction if necessary; and (5) whether less restrictive means are available to satisfy the State's compelling interest.

*Id.* at 229.

In *Schimelpfenig*, the defendant was found guilty of first degree murder and was ordered not to enter Grays Harbor County, where the victim's remaining family lived. 128 Wn. App. at 225. We held that the order banishing Schimelpfenig was overly broad and not narrowly tailored to serve the State's interests, reasoning:

> There is no evidence in the record that Schimelpfenig ever posed a threat to [the victim's] family or that he has desired continued contact with them when he is released. There also is no evidence that the [victim's] family frequents so much of the 1,917 square miles of Grays Harbor County as to justify a countywide ban. Moreover, the record suggests that Schimelpfenig has some form of mental disability and, as a result of this disability, he has lived with his family in Grays Harbor County for his entire life. Banning him for life from residing in the county is therefore likely to heavily burden his family and be counterproductive to rehabilitation. . . .

The facts of this case suggest that a more narrowly-tailored restriction would satisfactorily protect the [victim's] family from being reminded of their loss.

*Id.* at 230.

In the present case, Martinez's victim continued to reside in Thurston County after Martinez's crime. We have previously acknowledged that the State has a compelling interest in preventing contact between a defendant and victim where the defendant continues to pose a threat to the victim after release. *Schimelpfenig*, 128 Wn. App. at 229. The record shows that the ISRB was concerned about permitting Martinez to live in Thurston County because "there are victim issues in that area." Br. of Resp't at 95, Att. I. Martinez asserts that his victim now lives in Texas. DOC has not submitted any evidence suggesting that Martinez's victim does not currently reside in Texas.

If Martinez's victim no longer resides in Thurston County, then the rationale for precluding Martinez from entering that county, that there may be concerns regarding his potential contact with his victim, has thoroughly evaporated. Similarly, if Martinez's victim no longer resides or is no longer present in Thurston County, the five principles from *Schimelpfenig* would strongly indicate that banning Martinez from Thurston County violates his right to travel.

The ISRB argues that our analysis in *Schimelpfenig* is distinguishable from the present case because "the [ISRB]'s condition [prohibiting Martinez from entering Thurston County] is subject to modification in the event of changed circumstances." Br. of Resp't at 18. However, the evidence submitted by Martinez shows that he does not have a readily available means to modify his community custody conditions. According to Martinez's attorney, the ISRB would not consider Martinez's request to change his community custody conditions unless the CCO initiated the process, and the CCO refused to even consider Martinez's request. Reply to

Response to PRP, Decl. of Richard Woodrow, at 1. The ISRB has not submitted any evidence showing that Martinez has a clear means to request a modification of his conditions of community custody.[3]

Based on the evidence before us, Martinez has no readily available means of modifying his conditions of community custody, even when the justification for a condition ceases to exist. Rather, it appears that Martinez is entirely dependent on the discretion of his CCO, who may flatly refuse to initiate the community custody modification procedure with impunity.

In the absence of a readily available means to modify his conditions, Martinez is effectively subject to a lifetime ban from Thurston County, even if changing circumstances remove any basis for prohibiting his presence in that county. On its face, as well as under the five *Schimelpfenig* principles, this violates Martinez's right to travel recognized by *Shapiro*, *Eggert*, and *Schimelpfenig*.

To preserve Martinez's right to travel, the ISRB must afford him a reasonable and readily available means of showing that his ban from Thurston County is no longer warranted under the factual circumstances. Without that, the ISRB's condition of community custody prohibiting Martinez from entering Thurston County violates his constitutional right to travel.

## CONCLUSION

We grant Martinez's PRP, strike the condition of community custody prohibiting Martinez from entering Thurston County, and remand to the ISRB to reevaluate Martinez's conditions of community custody. At a minimum, the ISRB should hold a hearing that affords

---

[3] We decline to accept the supplemental exhibits filed by the ISRB after oral argument in this case.

No. 49145-1-II

both parties a reasonable opportunity to present evidence and reasons why Martinez should or should not be barred from traveling to Thurston County. If reinstatement of the ban is sought, the ISRB shall evaluate the request under the *Schimelpfenig* principles discussed in this opinion and may reinstate the ban only if it is shown to be narrowly tailored to serve a compelling governmental interest.

Bjorgen, C.J.

We concur:

Worswick, J.

Maxa, J.