# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>DON WESLEY WINTON,<br><br>                        Petitioner. | No.  52371-0-II<br><br><br><br>UNPUBLISHED OPINION |

MARTIN, J.P.T.[*] — Don W. Winton, who had pleaded guilty to two counts of first degree child molestation and one count of third degree child molestation, was placed on conditional release following his conviction and the Indeterminate Sentence Review Board (ISRB) imposed additional restrictions.  Winton filed a personal restraint petition (PRP) challenging the ISRB's conditions.  Winton argues that (1) the ISRB's conditions prohibiting him from entering the City of Seattle, Clallam County, Skamania County, or the State of Oregon north of Highway 20, and Clark County without approval are unconstitutional[1] and (2) the ISRB's condition requiring random urinalysis (UA) testing is unconstitutional.

---

[*] Judge Elizabeth P. Martin is serving as a judge pro tempore for the Court of Appeals, pursuant to RCW 2.06.150.

[1] After Winton filed his PRP, the ISRB eliminated all geographic conditions except the prohibition against entering Clark County.  The ISRB addressed only the Clark County geographic condition in its response to the petition.  Winton originally challenged all geographic conditions, however,

No. 52371-0-II

We hold that the geographic condition prohibiting entry into Clark County is unconstitutional because it is not narrowly tailored and that the ISRB did not have the authority of law to impose random urinalysis (UA) testing under the facts of this case. Accordingly, we grant Winton's PRP and remand for the ISRB to strike the UA condition and to narrowly tailor the remaining Clark County geographic condition.

FACTS

On July 5, 2007, Winton pleaded guilty to two counts of first degree child molestation involving his niece (G.L.D.)[2] from January 1, 1999 to August 31, 2001 (count I) and from September 1, 2001 to August 7, 2004 (count II). He also pleaded guilty to one count of third degree child molestation involving his stepdaughter (A.L.D.) from July 2, 2000 to July 1, 2002 (count III).

On October 23, 2007, the sentencing court imposed determinate sentences of 98 and 44 months for counts I and III, respectively. For count II, the superior court imposed an indeterminate sentence under former RCW 9.94A.712 (2001), *recodified* as RCW 9.94A.507 with a minimum term of 98 months and a maximum term of life. The trial court ordered Winton's sentences be served concurrently. The sentencing court imposed a lifetime no-contact order with respect to

---

in his reply to the ISRB's response, Winton agreed that the only remaining geographic condition at issue is the one relating to Clark County. Accordingly, we address only that geographic condition.

[2] We use initials instead of names for victims of sex crimes to protect their privacy. Gen. Order 2011-1 of Division II, *In re Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App.).

G.L.D. and a five-year no-contact order with respect to A.L.D.[3]  Winton refused to sign the no-contact orders and they took effect on the court's signatures.

Prior to Winton's release from custody, the ISRB imposed additional conditions of no contact with eight individuals, including victim A.L.D.  Winton signed this "Order of Release and Conditions."

## I.  2014 RELEASE AND GEOGRAPHIC CONDITIONS

On September 29, 2014, the ISRB ordered Winton's conditional release from confinement and placed conditions on him.  The ISRB restricted Winton's ability to travel to "the City of Seattle, Clark or Clallam County without prior written approval of [his] CCO and the ISRB."  PRP, Ex. D at 2.

On October 24, the ISRB imposed another condition stating, "You must not enter Skamania County or the state of Oregon north of Highway 20 without prior written approval of your CCO and the ISRB."  PRP, Ex. I at 1.  The ISRB later amended this condition on March 4, 2016, to also prohibit Winton from traveling to Arch Cape, Oregon without prior written approval of his CCO.

On both July 15, 2015, and June 29, 2016, Winton requested that the ISRB remove the prohibition on travel to Seattle.  The ISRB denied both requests.

On July 16, 2018, the ISRB signed an order of release and conditions addendum.  In this addendum, the ISRB modified Winton's geographic conditions by striking all of the geographic conditions except the condition that he "must not enter Clark County without prior written approval of [his] CCO and ISRB."  Resp. of ISRB, Ex. 8 at 1.

---

[3] The sentencing court erroneously referred to A.L.D. as "A.L.W." in the order.  PRP, Ex. C at 1.

## II. URINE COLLECTION AND TESTING

Winton's original judgment and sentence contained a clause that stated that he shall "not consume controlled substances except pursuant to lawfully issued prescriptions." Resp. of ISRB, Ex. 1 at 7. The sentencing court, however, crossed out a prechecked box and wrote "no" next to a condition that said Winton "shall not possess, use or deliver drugs prohibited by the Uniform Controlled Substances Act[, ch. 69.50 RCW], or any legend drugs, except by lawful prescription." Resp. of ISRB, Ex. 1 at 8. The sentencing court also did not check a box next to the following conditions:

☐ The defendant shall not consume any alcohol.
. . . .
☐ Defendant shall not use or possess alcoholic beverages ☐ at all ☐ to excess.
. . . .
☐ Defendant shall submit to urine, breath or other screening whenever requested to do so by the treatment program staff and/or the [CCO].

Resp. of ISRB, Ex. 1 at 7-9.

The judgment and sentence attached the prosecutor's pretrial offer as appendix A, which included a condition that "[y]ou shall not possess, consume, or deliver controlled substances, except pursuant to a lawfully issued prescription." Resp. of ISRB, Ex. 1, App. A at 5. However, the pretrial offer specifically struck out the condition prohibiting consumption of alcohol nor did it require Winton to submit to urine, breath, or other screening whenever requested by the CCO.

On May 11, 2017, the ISRB issued an addendum to its order of release and conditions requiring Winton to

submit to periodic and random drug and/or alcohol monitoring through an agency approved by your CCO and sign a full release of information allowing the treatment or monitoring agency to release information to your CCO and the [ISRB].

4

PRP, Ex. L at 1.  Winton refused to sign this addendum to the  order of release and conditions.  On May 24, he objected in  writing on the basis that it directly conflicted with his judgment and sentence.  The ISRB responded by noting that the judgment and sentence ordered Winton not to consume controlled substances except pursuant to lawfully issued prescriptions and the judgment and sentence stated that he shall submit to affirmative acts necessary to monitor compliance with the orders of the court.  Winton filed a PRP challenging the ISRB's conditions.

While this petition was pending, the superior court issued an order correcting the judgment and sentence on the joint motion of the parties.  Resp't's Mot. to Suppl. the R. and Notice of Mootness Regarding UA Condition, *In re Pers. Restraint of Winton*, No. 52371-0-II (Wash. Ct. App. Feb. 5, 2019), Ex. 1.  The superior court corrected the judgment and sentence by removing the condition that Winton "'not consume controlled substances except pursuant to lawfully issued prescriptions'" and removing the condition from appendix A attached to the judgment and sentence, which stated, "'[Y]ou shall not possess, consume, or deliver controlled substances, except pursuant to a validly issued prescription.'"  Resp't's Mot. to Suppl. the R. and Notice of Mootness Regarding UA Condition, *In re Pers. Restraint of Winton*, No. 52371-0-II (Wash. Ct. App. Feb. 5, 2019), Ex. 1.  We initially denied the ISRB's motion to supplement the record with this order, however, at oral argument Winton said he would not object to it being part of the record.  Wash. Court of Appeals oral argument, *In re Pers. Restraint of Winton*, No. 52371-0-II (Feb. 28, 2019), at 15 min., 52 through 57 sec.; 39 min., 0 through 1 sec.  Therefore, we consider the corrected judgment and sentence in our analysis below.

ANALYSIS

STANDARD OF REVIEW

In general, to obtain relief through a PRP, a petitioner must "'establish that a constitutional error has resulted in actual and substantial prejudice, or that a nonconstitutional error has resulted in a fundamental defect which inherently results in a complete miscarriage of justice.'" *In re Pers. Restraint of Martinez*, 2 Wn. App. 2d 904, 909, 413 P.3d 1043 (2018) (quoting *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 298, 88 P.3d 390 (2004)). However, if a petitioner had no prior opportunity for judicial review, then he need only demonstrate that he is restrained under RAP 16.4(b) and the restraint is unlawful under RAP 16.4(c). *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 148-49, 866 P.2d 8 (1994); RAP 16.4. Because Winton has not had a prior opportunity for judicial review of his ISRB-imposed conditions, Winton must establish that he is restrained and his restraint is not lawful. *See Martinez*, 2 Wn. App. 2d at 909.

Under RAP 16.4(b), a petitioner is under restraint if he

has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to imminent confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case.

Under RAP 16.4(c), a restraint is unlawful if it falls within a listed category, which includes RAP 16.4(c)(6). RAP 16.4(c)(6) states, "The conditions or manner of the restraint of petitioner are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." Thus, if a condition or manner of restraint violates the federal or state constitutions, the condition is an unlawful restraint.

The condition prohibiting Winton from entering Clark County without approval from his CCO and the ISRB and requiring him to submit to random UA testing limit his freedom. *See* RAP 16.4(b). Therefore, Winton is restrained.

## I. GEOGRAPHIC RESTRICTION

Winton argues that the geographic condition prohibiting him from entering Clark County is unconstitutional. We agree that this condition unconstitutionally restricts Winton's right to travel because it is not narrowly tailored.

### A. PRINCIPLES OF LAW

Under Washington law, offenders sentenced under former RCW 9.94A.712 must comply with "any conditions imposed by the [ISRB] under . . . RCW 9.95.420 through 9.95.435." RCW 9.95.420(3)(a)[4] provides that the ISRB "shall order the offender released, under such affirmative and other conditions as the [ISRB] determines appropriate."

Our Supreme Court has recognized a constitutional right to travel, which includes both intrastate and interstate movement. *Eggert v. Seattle*, 81 Wn.2d 840, 845, 505 P.2d 801 (1973). In *State v. Schimelpfenig*, we specified that we apply strict scrutiny when reviewing a banishment order and therefore the order must be narrowly tailored to serve a compelling governmental interest. 128 Wn. App. 224, 226, 115 P.3d 338 (2005).

### B. CLARK COUNTY GEOGRAPHIC RESTRICTION

Winton argues that the geographic restriction prohibiting him from entering Clark County unconstitutionally restricts his travel. Winton specifically argues that the geographic condition

---

[4] We cite to the current version of RCW 9.95.420 because for our purposes, it has remained substantively the same.

prohibiting him from entering Clark County is overly broad to serve the presumptive purpose of protecting the victims. He argues that the no-contact orders in place are sufficient to achieve this purpose.

The ISRB appears to argue that the geographic condition serves a compelling interest because the condition has both a "rehabilitative purpose and a community safety purpose." Resp. of ISRB at 14. The ISRB acknowledges that there are no-contact orders already in place but emphasizes that, at the time of sentencing, Winton refused to sign the no-contact orders. A declaration from the ISRB's victim liaison states that both of Winton's adjudicated victims, one unadjudicated victim, and the mother of two of the victims still reside in Clark County.

The ISRB further argues that the condition is not a "true 'banishment'" because Winton may travel through Clark County so long as he obtains approval from his CCO and the ISRB. Resp. of ISRB at 14. The ISRB contends that this is not an onerous burden for Winton to get approval from the CCO and the ISRB. To show this, the ISRB relies on documentation showing when previous approvals were granted for Winton to travel to various counties and other states. At oral argument, the ISRB justified the request for advance approval by noting that it had the effect on at least one occasion of preventing inadvertent contact between Winton and one of the victims' family members. Wash. Court of Appeals oral argument, *In re Pers. Restraint of Winton*, No. 52371-0-II (Feb. 28, 2019), at 29 min. through 30 min., 30 sec. We agree with Winton that the geographic restriction imposed on Winton unconstitutionally restricted his travel.

In *Schimelpfenig*, we set forth a nonexclusive set of factors to consider in determining whether a geographic restriction infringes on a defendant's right to travel including

> (1) whether the restriction is related to protecting the safety of the victim or witness
> of the underlying offense; (2) whether the restriction is punitive and unrelated to

8

rehabilitation; (3) whether the restriction is unduly severe and restrictive because the defendant resides or is employed in the area from which he is banished; (4) whether the defendant may petition the court to temporarily lift the restriction if necessary; and (5) whether less restrictive means are available to satisfy the State's compelling interest.

128 Wn. App. at 229.

Citing *Schimelpfenig*, we held in *State v. Sims*, 152 Wn. App. 526, 530, 532-33, 216 P.3d 470 (2009), *aff'd*, 171 Wn.2d 436, 256 P.3d 285 (2011), that a trial court's sentence containing a lifetime banishment barring residence in Cowlitz County, entry into Cowlitz County other than to travel from a location outside the county to a destination outside the county, and entry into the City of Castle Rock was an unconstitutional encroachment on the defendant's right to travel, not narrowly tailored to any compelling governmental interest.

More recently, in *Martinez*, we struck down a condition imposed by the ISRB prohibiting the defendant from entry into Thurston County without prior written approval from his CCO and the ISRB, based on the residence of the victim. 2 Wn. App. 2d at 916. In that case, Martinez asserted that the victim had subsequently moved to Texas and therefore Martinez maintained that the rationale for the condition no longer existed. *Martinez*, 2 Wn. App. 2d at 915. We held that a lifetime ban from entry into Thurston County was akin to a banishment order and unconstitutional because Martinez had no readily available means to modify the condition even if the basis for the prohibition no longer existed. *Martinez*, 2 Wn. App. 2d at 913, 916. Application of the *Schimelpfenig* factors and our holdings in the *Sims* and *Martinez* cases inform our analysis here.

In looking at the first *Schimelpfenig* factor[5] "(1) whether the restriction is related to protecting the safety of the victim or witness of the underlying offense" we recognize that the ISRB has a compelling interest in preventing contact between Winton and the victims and the victims' families still residing in Clark County. 128 Wn. App. at 229; *see Martinez*, 2 Wn. App. 2d at 915. However, the ISRB conceded during oral argument that a condition preventing Winton from even "traveling through" Clark County would be overly broad. Wash. Court of Appeals oral argument, *In re Pers. Restraint of Winton*, No. 52371-0-II (Feb. 28, 2019), at 26 min., 47 sec. through 27 min., 0 through 6 sec. It follows that if a condition that prevents Winton from "traveling through" Clark County is overly broad then a condition that prevents Winton from "enter[ing] Clark County without prior written approval of [his] CCO and ISRB" also is overly broad. Resp. of ISRB, Ex. 8 at 1.

The ISRB's geographic condition in this case is more restrictive than the order in *Schimelpfenig* because the order in *Schimelpfenig* prohibited the defendant from residing in a county, but here, it prohibits travel *even through* a county. 128 Wn. App. at 225. This condition is also more restrictive than the condition in *Sims*, which allowed Sims to travel through a county if the ultimate destination was outside the county. 152 Wn. App. at 530. We note that the challenged condition is almost identical to the condition the ISRB imposed in *Martinez*, one which we deemed "akin" to a banishment order. 2 Wn. App. 2d at 913. Thus, we agree with Winton that the condition prohibiting Winton from entering Clark County without permission is akin to

---

[5] We do not address *Schimelpfenig* factors two and three in our analysis because the parties do not rely on these factors for their arguments and the record does not support that these factors apply to this case.

banishment and is more restrictive than the conditions in *Schimelpfenig* and *Sims*. We, therefore, accept the ISRB's concession as to "travel through" and ultimately conclude that like *Schimelpfenig* and *Sims*, the geographic condition here is overly broad to accomplish the ISRB's purpose of protecting the victims and their families.

Furthermore, Winton contends that he was released in 2014 and has not violated any conditions of his release. Therefore, he argues that the condition is overly broad to serve the presumptive purpose of protecting the victims in this case. The ISRB agreed during oral argument that Winton had not violated any conditions, including the no-contact orders. Wash. Court of Appeals oral argument, *In re Pers. Restraint of Winton*, No. 52371-0-II (Feb. 28, 2019), at 27 min., 28 through 36 sec. There are already no-contact orders prohibiting his contact with the victims, and there is no indication from the record that Winton would not abide by those orders. Likewise, the *Schimelpfenig* court also took into consideration the fact that Schimelpfenig was already prohibited from contacting the victim's family and there was no evidence in the record that Schimelpfenig posed a threat or desired contact with the victim's family. 128 Wn. App. at 230.

The fifth *Schimelpfenig* factor is "whether less restrictive means are available to satisfy the State's compelling interest." 128 Wn. App. at 229. Here, a more narrowly tailored geographical restriction would still protect the victims and the victims' families residing in Clark County.

The ISRB contends that unlike *Martinez*, here, Winton has a readily available means of modifying his condition if the justification ceases to exist. Winton was notified when he signed his conditions of release that "[a]ll conditions including the condition(s) in question will remain in effect until the ISRB rules that the condition does not correlate to an item above." Resp. of ISRB, Ex. 5 at 3. These items include "[t]he crime of conviction," the "risk to reoffend," and "[t]he safety

of the community." Resp. of ISRB, Ex. 5 at 3. The ISRB also notes that Winton was informed of the procedure to appeal an ISRB-imposed condition.

Winton responds that *Schimelpfenig*'s fourth factor, which states, "'[W]hether the defendant may petition the court to temporarily lift the restriction if necessary,'" concerns a person's right to seek address in the court, but does not refer to an internal review process. 128 Wn. App. at 229. Winton argues that an internal review process does not ensure Winton's constitutional rights will be protected.

We agree with Winton that this internal review process does not adequately protect Winton's constitutional rights and that he does not have a readily available means of modifying his condition. This is demonstrated by the fact that the ISRB did not strike the other travel conditions until shortly before it responded to Winton's PRP. Therefore, we find ISRB's argument unpersuasive.

Applying the relevant *Schimelpfenig* factors and our holdings in *Sims* and *Martinez*, we find that the geographic condition relating to Clark County is not sufficiently tailored and is therefore an unconstitutional encroachment on Winton's right to travel. We remand to the ISRB to narrowly tailor the Clark County geographic restriction.

## II. URINALYSIS TESTING

Winton argues that the condition requiring him to submit to UA testing is an unconstitutional intrusion into his private affairs. The ISRB argues that this condition is directly related to Winton's judgment and sentence and contends that the ISRB has authority to impose this condition to monitor Winton's compliance with the judgment and sentence. We hold that the ISRB does not have authority of law to impose this condition under the facts of this case.

### A. PRINCIPLES OF LAW

The Washington State Constitution states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. "It is well established that in some areas, this provision provides greater protection than the Fourth Amendment, its federal counterpart." *State v. Olsen*, 189 Wn.2d 118, 122, 399 P.3d 1141 (2017). The collection and testing of urine is one of these areas of increased protection. *Olsen*, 189 Wn.2d at 122.

In general, suspicion-less UA testing constitutes a disturbance of one's private affairs that, absent authority of law, violates article I, section 7. *York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 306, 316, 178 P.3d 995 (2008). Two inquiries are implicit in an article I, section 7 claim: (1) whether the contested state action "disturbed" a person's private affairs and, if so, (2) whether the action was undertaken with "authority of law." *State v. Reeder*, 184 Wn.2d 805, 814, 365 P.3d 1243 (2015).

Typically, an intrusion into an individual's private affairs is conducted with authority of law when it is supported by a warrant or a recognized exception to the warrant requirement. *Olsen*, 189 Wn.2d at 126. However, "because probationers have a reduced expectation of privacy, the

13

State does not need a warrant, an applicable warrant exception, or even probable cause to search a probationer." *Olsen*, 189 Wn.2d at 126. Even so, some authority of law must still justify the intrusion into their reduced expectation of privacy. *Olsen*, 189 Wn.2d at 126. This authority of law is limited to when "a compelling interest, achieved through narrowly tailored means, supports the intrusion." *Olsen*, 189 Wn.2d at 128.

## B. AUTHORITY OF LAW

Here, the ISRB imposed a condition that Winton must submit to periodic and random drug and/or alcohol monitoring. Winton argues that there is no authority of law authorizing this invasion of privacy into his private affairs.

In *Olsen*, our Supreme Court addressed the constitutionality of a court requiring a probationer to submit to random UA testing. 189 Wn.2d at 122. Olsen pleaded guilty and was convicted of driving under the influence (DUI). *Olsen*, 189 Wn.2d at 121. As a condition of her sentence, the superior court ordered, and the judgment and sentence reflected, that Olsen could not consume alcohol, marijuana, or nonprescribed drugs. *Olsen*, 189 Wn.2d at 121-22. The superior court also required Olsen to submit to random UA screens to ensure compliance with her conditions. *Olsen*, 189 Wn.2d at 121.

The court determined that the condition was constitutional because it held that the judgment and sentence constituted sufficient authority of law. *Olsen*, 189 Wn.2d at 126. The court held that the State had a compelling interest in supervising a probationer in the context of a conviction for DUI in order to assess her progress towards rehabilitation and compliance with probation conditions. *Olsen*, 189 Wn.2d at 129, 135. The court further held that the screens were narrowly tailored because it was a monitoring tool "to assess compliance with a valid prohibition on drug

and alcohol use." *Olsen*, 189 Wn.2d at 130, 135. We apply the standard set out in *Olsen* and look at whether there is authority of law justifying the intrusion. 189 Wn.2d at 126.

Here, at oral argument, Winton said he would not object to the corrected judgment and sentence being part of the record and therefore, we consider it. Wash. Court of Appeals oral argument, *In re Pers. Restraint of Winton*, No. 52371-0-II (Feb. 28, 2019), at 15 min., 52 through 57 sec.; 39 min., 0 through 1 sec. The corrected judgment and sentence removes the condition that Winton "'not consume controlled substances except pursuant to lawfully issued prescriptions'" and removes the condition that stated, "'[Y]ou shall not possess, consume, or deliver controlled substances, except pursuant to a validly issued prescription.'" Resp't's Mot. to Suppl. the R. and Notice of Mootness Regarding UA Condition, *In re Pers. Restraint of Winton*, No. 52371-0-II (Wash. Ct. App. Feb. 5, 2019), Ex. 1. Thus, the judgment and sentence as corrected cannot constitute authority of law for the UA testing condition because the trial court affirmatively intended not to impose a controlled substances prohibition, nor does the record support any additional authority under RCW 9.94A.704.[6] We, therefore, remand for the ISRB to strike this condition.

---

[6] RCW 9.94A.704(2)(a) provides, "The [Department of Corrections (DOC)] shall assess the offender's risk of reoffense and may establish and modify additional conditions of community custody based upon the risk to community safety." Thus, it appears that DOC or the ISRB may impose a UA condition in the future if Winton shows a "risk." *See* RCW 9.94A.704. However, under RCW 9.94A.704(6), "[t]he [DOC] may not impose conditions that are contrary to those ordered by the court and may not contravene or decrease court-imposed conditions." Given that the ISRB now concedes that the corrected judgment and sentence no longer authorizes UA testing and because there is no present risk identified, we need not address this issue further.

No. 52371-0-II

CONCLUSION

We grant Winton's PRP and remand to the ISRB to strike the UA condition and to narrowly tailor the remaining geographic condition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Elizabeth P. Maik_, JPT

MARTIN, J.P.T.

We concur:

_____, A.C.J.

LEE, A.C.J.

_____

SUTTON, J.

16